

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-13-00780-CR

Israel **ZAPATA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR7708D
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:      Sandee Bryan Marion, Justice
             Marialyn Barnard, Justice
             Luz Elena D. Chapa, Justice

Delivered and Filed:  October 8, 2014

AFFIRMED AS MODIFIED

A jury convicted Israel Zapata of aggravated robbery. On appeal, he argues: (1) the trial court erred by denying his request to instruct the jury on the lesser-included offense of aggravated assault; (2) the trial court erred by denying his request for a spoliation instruction; and (3) the evidence is legally insufficient to support the trial court's assessment of his appointed attorney's fees as costs. We modify the trial court's judgment to delete the assessment of attorney's fees against Zapata and affirm the judgment as modified.

**BACKGROUND**

One night in June 2012, Eder Cerros, the complainant, and Sulema Rodriguez were communicating through an online dating website. They agreed that Rodriguez would pick Cerros up and take him to her place. Rodriguez picked up Cerros in a minivan. Cerros testified Rodriguez made a series of right turns until they were essentially heading back to where she had picked him up. As they approached a stop sign, Cerros noticed three men on a corner drinking beer. Those three men were Zapata, Juan Torres, and Jonathan Garza.

When Rodriguez stopped the van at the stop sign, one of the men drinking beer struck Cerros on the head with a bottle, which shattered from the impact. The man, who was wearing a black shirt, forced his way into the passenger seat, while the two other men entered the back of the van. Cerros testified that someone grabbed his throat from behind and began choking him. According to Cerros, as he was being choked, the man next to him was poking him in the chest with a knife. While Cerros was being assaulted, Rodriguez continued to drive the van, and Cerros heard her crying, screaming, and saying not to hurt him. Cerros testified that later Rodriguez exited the van, and one of the men in the back of the van came up to the front and began to drive.

One of the men demanded that Cerros "[g]ive me all your money and everything that you got on you." Cerros handed over his cell phone and the money in his wallet. He was then pushed out of the moving van. Cerros made it back to his home, where someone called the police. He gave the responding police officer a description of the van, and about ten or twenty minutes later he was told that police officers had detained some suspects.[1] The responding officers transported Cerros to where they had detained the suspects in a van. Cerros testified a police officer showed him three men individually. He testified he identified Zapata as one of his attackers, and he accused Zapata

---

[1] According to the police officers' testimony, the officers began following the suspects' van because it matched Cerros's description of the van. The officers stopped the van when they observed it fail to stop at a stop sign.

of hitting him with a bottle and stabbing him with a knife. At trial, Rodriguez also testified that Zapata was the one who hit Cerros with a bottle and attempted to stab Cerros with a knife.

Zapata was convicted, sentenced to a thirty-year term of imprisonment, and assessed a $5,000 fine.

## LESSER-INCLUDED-OFFENSE INSTRUCTION

In his first point of error, Zapata argues the trial court erred by denying his request to instruct the jury on the lesser-included offense of aggravated assault.

Zapata testified at trial that he was not involved in the robbery against Cerros. According to Zapata, he had recently met Torres and Garza through Rodriguez. He testified that all four of them were driving around when they stopped at a convenience store to purchase beer. Zapata and Garza exited the van. Rodriguez and Torres borrowed Zapata's van to go to her aunt's house. Zapata testified that when Rodriguez and Torres returned they passed him by, but picked up Garza. According to Zapata, Garza struck someone in the van with a beer bottle, and Garza then got in the van. The van later returned without Rodriguez. Zapata testified that he ordered Cerros, whom he did not know, out of his van, took control of the van, and drove away with Torres and Garza. Zapata testified that he had nothing to do with the robbery and he had no intent to rob anyone.

A two-prong test (the *Rousseau* test) governs whether the jury must be instructed on a lesser-included offense: first, the lesser-included offense must be included within the proof necessary to establish the offense charged, and second, some evidence must exist in the record that would permit a rational jury to find that if the defendant is guilty, he is guilty only of the lesser offense. *Sorto v. State*, 173 S.W.3d 469, 475–76 (Tex. Crim. App. 2005); *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993).

The first prong of the *Rousseau* test—whether the proof necessary to establish the charged offense also includes the lesser offense—is a question of law and does not depend on the evidence

raised at trial. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). To make this determination, we compare the elements alleged in the indictment with the elements of the potential lesser offense. *Id.* An offense is a lesser-included offense if, *inter alia*, "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006). An offense is a lesser-included offense of another offense if the indictment for the greater-inclusive offense alleges all of the elements of the lesser-included offense. *Cavazos*, 382 S.W.3d at 383.

The State's indictment charged Zapata with aggravated robbery, alleging he:

- intentionally, knowingly, and recklessly caused Cerros bodily injury; and
- used and exhibited a deadly weapon;
- while in the course of committing theft;
- and with the intent to obtain and maintain control of the stolen property.

*See* TEX. PENAL CODE ANN. §§ 29.02(a)(1); 29.03(a)(2) (West 2011). A person may be charged with aggravated assault if he "intentionally, knowingly, or recklessly causes bodily injury to another" and "uses or exhibits a deadly weapon during the commission of the assault." *Id.* §§ 22.01(a)(1); 22.02(a)(2) (West 2011 & Supp. 2014). Both elements were alleged by the State in the indictment, and thus aggravated assault by causing bodily injury and using a deadly weapon is a lesser-included offense of the aggravated robbery charged in the indictment.

The second prong of the *Rousseau* test—whether there is some evidence from which a rational jury could conclude the defendant was guilty *only* of the lesser offense—is a question of fact based on the evidence presented at trial. *Cavazos*, 382 S.W.3d at 383. The evidence must be evaluated in the context of the entire record. *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998); *see Godsey v. State*, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986) (holding the defendant's testimony "cannot be plucked out of the record and examined in a vacuum" in order to support a lesser-included-offense instruction). Anything more than a scintilla of evidence may be sufficient

to entitle a defendant to a lesser-included-offense instruction. *Cavazos*, 382 S.W.3d at 385. "However, the evidence produced must be sufficient to establish the lesser-included offense as a 'valid, rational alternative' to the charged offense." *Id.*; *see also Sorto*, 173 S.W.3d at 476 ("In other words, there must be some evidence from which a jury could rationally acquit the defendant of the greater offense while convicting him of the lesser-included offense."). "[A] lesser included offense may be raised if evidence either affirmatively refutes or negates an element establishing the greater offense, or the evidence on the issue is subject to two different interpretations, and one of the interpretations negates or rebuts an element of the greater." *Schweinle v. State*, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996).

Zapata argues that his testimony, if believed, negated the element of theft required for robbery. He thus contends his testimony raised the issue of whether, if he was guilty of anything alleged in the indictment, he was only guilty of aggravated assault. At trial, Zapata essentially denied all culpability in the events of that night. He testified that whatever happened to Cerros was done without his particpation and that he let Cerros out of his van as soon as the van was returned to him. He testified that Garza struck Cerros in the head with a bottle, and on appeal he emphasizes that Cerros's cash and cell phone were found on Garza's person. Zapata argues that a rational jury could have believed Cerros's testimony that Zapata hit him on the head with a bottle, but also could have believed Zapata's testimony denying his participation in or involvement with the theft. Zapata primarily relies on *Jones v. State* to support his argument. 984 S.W.2d 254 (Tex. Crim. App. 1998).

The State charged the defendant in *Jones* with robbery, alleging he took items from a store without paying for them and then assaulted agents of the store when they detained him. The loss prevention officer at the store testified she saw Jones pick up several items, put them in his pocket, and leave the store without paying for the items. *Id.* at 255. She testified that when Jones was

detained and taken back into the store, he punched her in the face and bit one of her assistants. *Id.* Jones testified that he did not take the items from the store without paying for them, that he did not intend to steal, and that he only "did self-defense" and did not assault anyone. *Id.* at 256.

The Court of Criminal Appeals held the trial court should have submitted instructions on the lesser-included offenses of misdemeanor theft and misdemeanor assault because the jury was free to believe or disbelieve all parts of the evidence. The court rejected the State's argument that focused on Jones's "blanket" denial of criminal culpability in any element of the charged robbery, holding that the "trier of fact is always free to selectively believe all or part of the testimony proffered and introduced by either side." *Id.* at 257–58. The court concluded the jury should have been charged on the lesser-included offenses because it could have believed Jones's testimony that he only "did self-defense" and disbelieved his testimony that he did not steal the property, allowing the jury to rationally conclude Jones committed theft, but not assault. *Id.* at 258. Likewise, the jury could have believed his testimony that he did not intend to steal and did not leave the store with property he had not paid for, but believed the State's evidence that he assaulted the loss prevention officer, and rationally concluded Jones committed assault, but not theft. *Id.* at 257.

We disagree with Zapata that this case is analogous to *Jones*. In *Jones*, a single actor was charged with an offense that included two lesser offenses. As the evidence was developed, a rational jury could have found Jones committed only one of the lesser offenses. In contrast, Zapata was charged with aggravated robbery, both as the primary actor and as a party in a case involving multiple actors. When a conviction under the law of parties is authorized by the indictment and the evidence, it must be considered in determining whether submission of a lesser-included offense is authorized. *Yzaguirre v. State*, 394 S.W.3d 526, 531 (Tex. Crim. App. 2013). Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both."

TEX. PENAL CODE ANN. § 7.01 (West 2011). The jury in this case was instructed that Zapata could be held criminally responsible if he solicited, encouraged, directed, aided, or attempted to aid the other person to commit an offense with the intent to promote or assist the commission of the offense. *See id.* §§ 7.01; 7.02(a)(2) (West 2011).[2]

What then is the effect of the instruction on the law of parties in Zapata's case? We start by noting that Zapata does not point to any evidence contradicting the evidence that an assailant demanded Cerros's money and valuables and that Cerros was choked and stabbed while in the van. Rather, Zapata testified he had no knowledge of what occurred in the van. Zapata's testimony does not negate the evidence that Cerros was assaulted in the course of a theft. *See Schweinle*, 915 S.W.2d at 19 ("[A] lesser included offense may be raised if evidence either affirmatively refutes or negates an element establishing the greater offense . . . ."); *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994) ("[W]e are satisfied it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted.").

Given the evidence that Cerros was the victim of a robbery while in the van, the question before us then is: could a rational jury conclude that if Zapata committed an assault against Cerros by hitting him with a bottle, he did so independently and not as a party to the robbery that occurred in the van? In this case, to take Zapata's denial that he committed or participated in a theft would be to pluck that testimony out of the record and ignore the uncontested evidence showing that a

---

[2] "To convict a person as a party to an offense, the evidence must show that at the time of the offense the parties were acting together, each doing some part of the execution of the common purpose." *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). "In determining whether the accused participated as a party, the court may look to events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Id.* "Evidence is sufficient to convict the defendant under the law of parties where he is physically present at the commission of the offense, and encourages the commission of the offense either by words or other agreement." *Id.*

robbery took place immediately after Zapata hit Cerros with a bottle. Zapata essentially argues that a jury could find he spontaneously committed an aggravated assault against Cerros, completely unconnected to the robbery that the evidence showed occurred in the van.

The only evidence from which a jury could have concluded that Zapata personally committed an assault against Cerros without entering the van was from testimony that Zapata smashed a bottle on his head. In light of the record as a whole, no rational jury that believed that part of Cerros's testimony could conclude that the assault was not done as a party to the robbery. We conclude that Zapata's lesser-included-offense instruction would not have presented the jury with a valid, *rational* alternative theory of liability under the facts of this case. *See Cavazos*, 382 S.W.3d at 385; *see also Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999) ("When the evidence raising the lesser-included offense also casts doubt upon the greater offense, it provides the fact finder with a *rational alternative* by voting for the lesser-included offense.") (emphasis added). We hold a rational jury could not have concluded Zapata was guilty of aggravated assault without also concluding he was guilty of aggravated robbery under the law of parties. We overrule Zapata's first point of error.

## SPOLIATION INSTRUCTION

In his second point of error, Zapata argues the trial court erred by denying his request to submit a spoliation instruction to the jury. Zapata argued the instruction was necessary to remedy the State's destruction of evidence in violation of his due process rights.[3]

---

[3] In civil cases, a spoliation instruction is a potential remedy for a party's intentional or negligent breach of its duty to reasonably preserve material and relevant evidence. *See Brookshire Bros., Ltd. v. Aldridge*, No. 10-0846, 2014 WL 2994435 (Tex. July 3, 2014). For the purposes of this opinion, we assume that a spoliation instruction is an available remedy in criminal cases for the State's destruction of evidence in violation of the due process clause. *But see Fonseca v. State*, No. 04-03-00398-CR, 2004 WL 2533305, at *3 (Tex. App.—San Antonio Nov. 10, 2004, no pet.) (overruling appellant's argument that the trial court erred in refusing to submit a spoliation instruction because there is no authority to support such an instruction).

At trial, Cerros testified Zapata was the person who hit him with a beer bottle and that he had identified Zapata as that person when the police officers conducted the "one-on-one" identification procedure. To conduct the procedure, the police officers placed Cerros in a police vehicle. The officers then brought the suspects detained from the van forward one-by-one with the lights from several police cars shining on them so Cerros could potentially identify them as his assailants.[4] The suspects could not see Cerros while he identified them. Although Cerros testified that he identified Zapata at that time, he also testified that he told the police that a "large" man hit him on the head with a bottle. Photographs from that night show that both Zapata and Garza were wearing black shirts when they were arrested and that Garza was more heavily built than Zapata.

Cerros admitted that he could not identify one of the three men shown to him that night, and at trial he testified that man was Garza. Zapata, however, testified that he was the man who Cerros could not identify and that he knew this because he overheard police officers saying Cerros did not identify him. He claimed the police officers were willing to let him go until one of them pointed out that Zapata had blood on his jeans and therefore they continued to detain him.

Before trial, Zapata filed several pretrial motions for discovery and disclosure of evidence. One of them asked for the disclosure of all videotapes made by the State, including those of the scene of the Zapata's arrest. Six days before trial, the district attorney's office informed Zapata that at one time there were a number of COBAN videotapes from Zapata's arrest. However, they had all been purged of the San Antonio Police Department's video system before the district attorney's office had an opportunity to download them.

At trial, a number of police officers who participated in the detention of Zapata and the other suspects testified they had COBAN recording systems in their vehicles. These systems were

---

[4] The testimony from trial shows Zapata was the first person shown to Cerros.

to begin video and audio recording when the car's emergency lights, takedown lights, or spotlights were on. Police officers testified that the department's policy at that time was to destroy recordings pertaining to felony investigations after one year, but DWI investigation recordings were exempt from the one-year destruction policy.

Zapata argues a spoliation instruction was necessary as a remedy for the police department's destruction of the COBAN recordings.[5] He argues that any confusion in Cerros's identification of him that night would have been immediately cleared up by the recordings because they would have proven that Cerros made a mistake when he testified he identified Zapata that night. He argues the jury would have been much more willing to believe his exculpatory testimony if the jury had known the police had been ready to release him that night.

The Supreme Court has recognized the State in some instances has a duty to preserve evidence in its possession and the violation of this duty may rise to the level of a due process violation under the Fourteenth Amendment. *Illinois v. Fisher*, 540 U.S. 544 (2004) (per curiam); *Arizona v. Youngblood*, 488 U.S. 51 (1988); *California v. Trombetta*, 467 U.S. 479 (1984). The Court distinguishes between two kinds of evidence. If the State fails to preserve material, exculpatory evidence, then the State has committed a due process violation. *Youngblood*, 488 U.S.

---

[5] Zapata requested the trial court submit the following instruction:

> The State has a duty to gather, preserve, and produce at trial evidence which may possess exculpatory value. Such evidence must be of a nature that the defendant would be unable to obtain comparable evidence through reasonably available means. The State has no duty to gather or indefinitely preserve evidence considered by a qualified person to have no exculpatory value, so that an as yet unknown defendant may later examine the evidence.

> If, after considering all of the proof, you find that the State failed to gather or preserve evidence, the contents or qualities of which are in issue and the production of which would more probably than not be of benefit to the defendant, you may infer that the absent evidence would be favorable to the defendant.

*See Pena v. State*, 226 S.W.3d 634, 656 (Tex. App.—Waco 2007), *rev'd on other grounds*, 285 S.W.3d 459 (Tex. Crim. App. 2009) (holding defendant failed to preserve error).

at 57; *see Brady v. Maryland*, 373 U.S. 83 (1963). However, if the State merely fails to preserve "potentially useful evidence," the defendant must show the State did so in bad-faith in order to show a violation of due process. *Youngblood*, 488 U.S. at 58; *Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010).

On appeal, Zapata concedes that he did not preserve an argument that the destruction of the COBAN recordings was done in bad faith. Therefore, Zapata must show that the evidence was material and exculpatory to show a due process violation.

"Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." *Trombetta*, 467 U.S. at 488. "To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488 (internal citation omitted) (citing *United States v. Agurs*, 427 U.S. 97, 109–110 (1976)).

Zapata has not shown the police were aware Cerros's identification of Zapata would be an issue before the recordings were destroyed. All of the police officers who responded to the scene of Zapata's detention testified Cerros identified Zapata as an assailant or testified they were not observing the identification. None of them testified that they considered letting Zapata go because Cerros failed to identify him. Zapata's general discovery request for videotape recordings of the night's events was also not sufficient to alert the police department that there may have been an issue regarding Cerros's identification of Zapata that the recordings could resolve. *Cf. Fisher*, 540 U.S. at 548 (holding pending discovery request does not *per se* show bad faith on the part of police). Zapata nevertheless generally attacks the Department's policy of destruction of COBAN recordings after one year and argues that "it defies logic to believe that the police had no inkling

that the various COBAN videos in felony cases must have had an exculpatory value to many, many criminal defendants." The Supreme Court has expressly avoided construing the Due Process Clause in a way that would "impos[e] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Youngblood*, 488 U.S. at 58. We conclude Zapata's argument concerning the materiality of the COBAN videos would stretch the Due Process Clause in just the way the Supreme Court has avoided. We hold Zapata has not shown a violation of his due process rights.

### ASSESSMENT OF ATTORNEY'S FEES

In his final issue, Zapata contends there is insufficient evidence to support the trial court's assessment of attorney's fees as court costs.

The trial court's judgment assessed court costs in the amount of "$334.00 plus atty fees," and the bill of costs states the amount of attorney's fees is "TBD" ("to be determined"). The trial court appointed counsel to represent Zapata at trial, and there is no evidence in the record that Zapata's ability to pay attorney's fees later changed. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(b)(1), (p) (West Supp. 2014); *Wiley v. State*, 410 S.W.3d 313, 317 (Tex. Crim. App. 2013). The State concedes Zapata's status as an indigent defendant precluded the assessment of attorney's fees as court costs. We therefore modify the judgment and the bill of costs to delete the assessment of attorney's fees against Zapata. *See*, *e.g.*, *Levins v. State*, No. 04-13-00866-CR, 2014 WL 2158425, at *2 (Tex. App.—San Antonio May 21, 2014, no pet.) (mem. op., not designated for publication).

**CONCLUSION**

We modify the judgment and the bill of costs to delete the assessment of attorney's fees against Zapata. We affirm the trial court's judgment as modified.

Luz Elena D. Chapa, Justice

Publish