PD-1514&1521&1522&1523-15

PD-1514&1521&1522&1523-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/23/2015 10:31:48 AM
Accepted 11/23/2015 11:41:00 AM
ABEL ACOSTA
CLERK

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

AUSTIN, TEXAS

CANDRA NICOLE APPLEGATE,
APPELLANT

NO. _____

(COURT OF APPEALS NOS. 11-14-00005-CR, 11-14-00006-CR, 11-14-00007-CR, & 11-14-00008-CR; TRIAL COURT NOS. 010734, 010735, 010736, & 010738)

STATE OF TEXAS,
APPELLEE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PETITION FOR DISCRETIONARY REVIEW
FROM THE COURT OF APPEALS
ELEVENTH JUDICIAL DISTRICT
EASTLAND, TEXAS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CHIEF JUSTICE JIM R. WRIGHT, PRESIDING

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

STAN BROWN
P.O. BOX 3122
ABILENE, TEXAS 79604
325-677-1851
FAX 325-677-3107
STATE BAR NO. 03145000
EMAIL: mstrb@aol.com

FILED IN
COURT OF CRIMINAL APPEALS

November 23, 2015

ABEL ACOSTA, CLERK

ATTORNEY FOR APPELLANT

IN THE COURT OF CRIMINAL APPEALS OF TEXAS
AUSTIN, TEXAS

CANDRA NICOLE APPLEGATE,
         APPELLANT

                     NO. _____

                     (COURT OF APPEALS NOS. 11-14-
                     00005-CR, 11-14-00006-CR, 11-14-00007-
                     CR, & 11-14-00008-CR; TRIAL COURT
                     NOS. 010734, 010735, 010736, & 010738)

STATE OF TEXAS,
         APPELLEE

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

Hon. Brooks Hagler
259th District Court
Jones County Courthouse
Anson, TX 79501

Stan Brown
Appellant's Attorney/ Appeal
P.O. Box 3122
Abilene, TX 79604

Joe Edd Boaz
District Attorney
Jones County Courthouse
Anson, TX 79501

Michael L. Parker
OFFICE OF ROBERT E. MCCOOL, PLLC
237 Market St.
Baird, TX 79504

Candra Nicole Applegate#1906166
William P. Hobby Unit H208B
742 FM 712
Marlin, TX. 76661

ii

# TABLE OF CONTENTS

**SUBJECT**                                                            **PAGE**

IDENTITY OF JUDGE, PARTIES, AND COUNSEL...........................ii

STATEMENT REGARDING ORAL ARGUMENT.............................v

STATEMENT OF THE CASE..........................................................1

STATEMENT OF PROCEDURAL HISTORY...............................2

## QUESTION PRESENTED FOR REVIEW

Did the Court of Appeals fail to deal with the fact the evidence was insufficient to convict Appellant alone of inflicting the injuries to the children for the reason there was no charge on the law of parties? (C.R. at 12-13, 24-29)(V R.R.)(VI R.R.)(VII R.R.)...............................3

PRAYER FOR RELIEF..................................................................9

CERTIFICATE OF SERVICE........................................................9

CERTIFICATE OF COMPLIANCE...............................................10

# INDEX OF AUTHORITIES

**CASES**                                            **PAGE**

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)..................................................................................3

*Beltran v. State*, _____ S.W.3d _____, 2015 WL 5955015 (Tex. Crim. App. October 14, 2015)................................................5

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)......................3

*Collier v. Poe*, 732 S.W.2d 332 (Tex. Crim. App. 1987)......................3

*Fuller v. State*, 73 S.W.3d 250 (Tex. Cr. App. 2002)..........................3

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)...3

*Johnson v. State*, 364 S.W.3d 292 (Tex. Crim. App. 2012)....................4

*McMillan v. State*, 754 S.W.2d 422 (Tex. App.-Eastland 1988, pet. ref'd)................................................................4-5, 7-8

*Walker v. State*, 823 S.W.2d 247 (Tex. Crim. App. 1991).....................5

*Zapata v. State*, 449 S.W.3d 220 (Tex. App.-San Antonio 2014, no pet.).....5

**CONSTITUTIONAL PROVISIONS & RULES**          **PAGE**

U.S. CONST. amend. XIV................................................*passim*

Tex. R. App. P. 9.4......................................................10

Tex. R. App. P. 66.3(c)..................................................4

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes the QUESTION PRESENTED; the constitutional relationship between an instruction on the law of parties and sufficiency of the evidence; is an issue that merits further clarification for the Bench and Bar. Therefore, the usual give and take of oral argument would be useful for the Court in determining the parameters of measuring the sufficiency of proof as against the allegations presented, and in the absence of a charge on parties when the issue was obviously raised. Oral argument is essential in order to aid this Court's decisional processes by providing a more in-depth exploration of that issue.

IN THE COURT OF CRIMINAL APPEALS OF TEXAS
AUSTIN, TEXAS

CANDRA NICOLE APPLEGATE,
          APPELLANT

NO. _____
(COURT OF APPEALS NOS. 11-14-00005-CR, 11-14-00006-CR, 11-14-00007-CR, & 11-14-00008-CR; TRIAL COURT NOS. 010734, 010735, 010736, & 010738)

STATE OF TEXAS,
          APPELLEE
*****************************************
PETITION FOR DISCRETIONARY REVIEW
FROM THE COURT OF APPEALS
ELEVENTH JUDICIAL DISTRICT
EASTLAND, TEXAS
*****************************************

## STATEMENT OF THE CASE

The indictments alleged Appellant caused bodily injury to a child under fourteen, TLW, by fracturing her arm, and caused her serious bodily injury by fracturing her leg, and by failure to seek medical attention. Causing bodily injury to DLW was similarly alleged, by fracturing his arm. (C.R. at 12-13) The jury found Appellant guilty on August 8, 2013. (C.R. at 10). On December 9, 2013, the trial court assessed Appellant's punishment at ten years TDCJ-ID on both bodily injury charges, and to twenty-six years on both serious bodily injury charges, and sentenced her accordingly. (C.R. at 11, 29-31). The Trial Court's Certifications of Defendant's Right of Appeal were timely filed (C.R. at 28-30). Appellant seeks review of the decision of the Court of Appeals that affirmed the convictions.

# STATEMENT OF PROCEDURAL HISTORY

Appellant presented two issues in her brief, and the Eastland Court of Appeals affirmed. *Applegate v. State*, 2015 WL 6121522 (Tex. App.-Eastland September 30, 2015)(Unpublished Memorandum Opinion)(Appendix). Appellant filed a motion for rehearing October 15, 2015, which was denied without written opinion October 22, 2015. This petition is due to be filed by November 23, 2015; it is therefore timely filed.

## QUESTION PRESENTED FOR REVIEW

Did the Court of Appeals fail to deal with the fact the evidence was insufficient to convict Appellant alone of inflicting the injuries to the children for the reason there was no charge on the law of parties? (C.R. at 12-13, 24-29)(V R.R.)(VI R.R.)(VII R.R.).

## ARGUMENT

Due Process of Law demands the recognition by this Court the State must prove what it alleges in order to lawfully obtain a conviction. That is the gravamen of the basic case law governing sufficiency of the evidence in this case. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010); *Fuller v. State*, 73 S.W.3d 250 (Tex. Cr. App. 2002); and *see generally, Collier v. Poe*, 732 S.W.2d 332 (Tex. Crim. App. 1987)[1] and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).[2] By its determination at pages six and seven of the Slip Opinion, "The focus is on the result of the defendant's action and his culpable mental state, not on the

---

[1] *Collier v. Poe, supra*, at 343-344, held Due Process rights belong to the individual, not the State.

[2] *Apprendi* held the Fourteenth Amendment's Due Process clause requires any fact that increases the penalty for a state crime beyond the prescribed statutory maximum--other than the fact of a prior conviction--must be submitted to a jury and proved beyond a reasonable doubt. "Any possible distinction between an 'element' of a felony offense and a 'sentencing factor' was unknown to the practice of criminal indictment, trial by jury, and judgment by court as it existed during the years surrounding our Nation's founding. As a general rule, criminal proceedings were submitted to a jury after being initiated by an indictment containing 'all the facts and circumstances which constitute the offence, . . . stated with such certainty and precision, that the defendant . . . may be enabled to determine the species of offence they constitute, in order that he may prepare his defence accordingly . . . and *that there may be no doubt as to the judgment which should be given*, if the defendant be convicted.'...The defendant's ability to predict with certainty the judgment from the face of the felony indictment flowed from the invariable linkage of punishment with crime...(after verdict, and barring a defect in the indictment, pardon or benefit of clergy, "the court *must pronounce that judgment, which the law hath annexed*

3

precise act or the nature of the conduct committed by the defendant," and by reliance on *Johnson v. State*, 364 S.W.3d 292 (Tex. Crim. App. 2012)[3] for that assertion, the court below decided an important question of state and federal law that conflicts with the foregoing applicable decisions of this Court and the Supreme Court of the United States. Tex. R. App. P. 66.3(c).

The Court of Appeals, we respectfully suggest, failed to sufficiently address our argument the evidence could only have been sufficient to sustain Appellant's conviction had the jury been instructed on the law of parties. That was the reason for our extensive reference to the *McMillan* case in Appellant's Brief. *See generally*, *McMillan v. State*, 754 S.W.2d 422, 423-424 (Tex. App.-Eastland 1988, pet. ref'd), wherein the Eastland Court of Appeals concluded, after summarizing the evidence that made plain it was either the appellant, her husband, or both in concert who stole the diamond in question in that case, "Looking at the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found appellant guilty beyond a reasonable doubt *under the law of parties*." *Id.* at 424. (Emphasis supplied).

The instant case, as well, involved a husband and wife accused of the same offense. Both cases included testimony that clearly established the offense was committed by either one or the other spouses, or by both

---

*to the crime*" (Emphasis supplied))." *Id.* 530 U.S. at 478-479. (Footnote and citations omitted).

[3] *Johnson* merely held a variance between the charging instrument alleging the defendant hit the victim with his hand and the act proved at trial, that defendant threw the victim against wall, was a result of an immaterial non-statutory allegation and thus did not render the evidence legally insufficient to support the conviction.

4

spouses. The significant difference, however, is the trial court in *McMillan* charged the jury on the law of parties, which charge was neither requested by the State, nor charged, in this case. In the absence of a charge on parties, the evidence was absolutely insufficient to establish beyond a reasonable doubt Appellant acting alone caused the injuries in question. Appellant's husband (VII R.R. at 157-159, the husband's mother (V R.R. at 159), and the Texas Ranger (VII R.R. at 239) all agreed the injuries *could* have been caused by Appellant alone, Appellant's husband alone, or both in concert.

And case law makes plain a charge on the law of parties does in fact lessen the State's burden of proof. *See generally, Walker v. State*, 823 S.W.2d 247 (Tex. Crim. App. 1991) which held the evidence failed to support the appellant's conviction in light of the charge allowing the jury to convict only if they found defendant guilty of his own conduct. *See also, Beltran v. State*, _____ S.W.3d _____, 2015 WL 5955015, Slip Op. 4-5 (Tex. Crim. App. October 14, 2015)("The law of parties applies to the determination of whether a defendant can be found guilty, either acting alone or together with another as a party..." *Id*. at 6).[4]

Daniel Wright, Appellant's husband, acknowledged he was also under accusation of injury to a child involving the twins. "[S]everal indictments of injury to child." (VII R.R. at 97-98). Then Wright conceded; following the discovery the twins had numerous broken bones necessitating surgery, both

---

[4] *cf. Zapata v. State*, 449 S.W.3d 220, 226-227 (Tex. App.-San Antonio 2014, no pet.)(When a conviction under the law of parties is authorized by the indictment and evidence, it must be considered in determining whether submission of a jury instruction on a lesser-included offense is authorized.)

5

CPS and law enforcement were getting involved, and both he and Appellant were charged with injury to the twins; he had called Appellant and left a message. That message was he was sorry and it was entirely his fault. He claimed, however, that was not an admission of injury to either of the twins, but instead it was his way of telling Appellant it was his fault the relationship between them was over. (VII R.R. at 158-163).

Wright also agreed that prior to the birth of the twins, he had a rule he would not handle babies under the age of one year. "The issue I had with that is I felt -- I didn't feel comfortable holding infants under a year old. So I did, I set a rule. I didn't carry them around. I did hold my niece and nephew, but it was sitting in a chair at the hospital or at their houses on a couch. I didn't carry them around or things like that. I didn't feel comfortable doing that." (VII R.R. at 173). He also emphatically stated he had never witnessed Appellant "be physically rough or injure these children." (VII R.R. at 175). Furthermore, there were numerous times when Appellant would leave the twins in his care, "Every couple of few days she would go for 30, 45 minutes," to "walk at the track." "[S]he just went a few times a week." (VII R.R. at 178-179). He agreed he told the police he did not think he had done anything to injure either of the twins, but if he had, it was accidental. (VII R.R. at 188-189). He agreed there was never a time when Appellant was supposed to take the children to the doctor and did not. (VII R.R. at 196).

At page 8 of the Slip Opinion, the Court of Appeals recognized, "Ranger Parker testified that either Appellant or Daniel or both Appellant

6

and Daniel were the only people that could have inflicted the twins' injuries." Other than that scant reference, the court below failed to deal with our primary sufficiency argument that when it is plain from the evidence in all likelihood DLW's and TLW's arms were fractured by either Appellant alone, Daniel Wright alone, or the two of them together, a jury cannot rationally find beyond a reasonable doubt Appellant alone caused the injuries. That is particularly compelling in view of there being no evidence specifically pointing to Appellant as the perpetrator, and with no charge on the law of parties. The court below should have considered and discussed *McMillan*. The Slip Opinion, however, does not even cite the case.

*McMillan v. State*, 754 S.W.2d 422, 423-424 (Tex. App.-Eastland 1988, pet. ref'd), however, must be considered, particularly in view of the absence of any charge on the law of parties in Appellant's case here:

> Appellant and her husband were both indicted for the theft of Mrs. Nita Neyland's diamond. They were tried jointly, and *the jury was instructed on the law of parties*. Appellant and her husband were both convicted of the offense...Appellant and her husband were driving from La Grange to Lubbock on New Year's Day. They stopped at the Briscoes' home...late in the afternoon and immediately went to the bathroom. To get to the bathroom, they went through the bedroom where the Neylands were staying and where the jewelry had been left...Before leaving, appellant, who was five months pregnant, again went to use the bathroom...Three or four minutes after the couple's departure, Mrs. Neyland went to her bedroom where she discovered her diamond was missing...In the case before us, the appellant and her husband alone had access to the bedroom where the jewelry was. Although appellant and her husband each denied taking the diamond, no one else was present in the house on New Year's Day other than the appellant and her husband, the owners of the house, and the victim and her husband...No one other than appellant and her husband entered the bedroom between the time the diamond was last seen and

7

when it was discovered missing. Appellant's behavior changed after her last trip to the bathroom…Looking at the evidence in the light most favorable to the prosecution, we find that *a rational trier of fact could have found appellant guilty beyond a reasonable doubt under the law of parties*. Id. at 423-424. (Emphasis supplied).

There was no objection to the charge by the State, and no request for submission of a charge on the law of parties. (VIII R.R. at 64). Plainly, the court below should have considered our core argument based upon *McMillan*, absent a charge on parties, the evidence was insufficient to support the convictions of Appellant for causing the injuries by acting alone. The failure to so do requires review by this Honorable Court in order to clarify the crucial relationship between the law of parties and Due Process sufficiency of the evidence for the Bench and Bar.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays that this Court grant discretionary review and oral argument and, after full briefing on the merits, issue an opinion reversing and this conviction to show a judgment of acquittal, or, alternatively, remand this cause to the Court of Appeals for a proper sufficiency analysis.

Respectfully submitted,

/s/ Stan Brown
STAN BROWN
P.O. BOX 3122
ABILENE, TEXAS 79604
325-677-1851
FAX 325-677-3107
STATE BAR NO. 03145000
EMAIL: mstrb@aol.com

ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that on this _____23rd_____ day of November, 2015, a true and correct copy of the above and foregoing Petition for Discretionary Review was emailed to Mr. Joe Edd Boaz, District Attorney, P.O. Box 507, Anson, TX 79501 at laura.davis@co.jones.tx.us; and to Ms. Lisa McMinn, State Prosecuting Attorney, at information@spa.texas.gov.

/S/ Stan Brown
STAN BROWN

9

## CERTIFICATE OF COMPLIANCE

I hereby certify that according to my computer program used to prepare the foregoing document, the word count, in accordance with Tex. R. App. P. 9.4, is ___1893___ words; and further certify that the brief is in Times 14-point type, except for footnotes which are Times 12-point type.

/S/ Stan Brown
STAN BROWN

# APPENDIX



In The

# Eleventh Court of Appeals

Nos. 11-14-00005-CR, 11-14-00006-CR,
11-14-00007-CR, & 11-14-00008-CR

CANDRA NICOLE APPLEGATE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 259th District Court

Jones County, Texas

Trial Court Cause Nos. 010734, 010735, 010736, & 010738

## MEMORANDUM OPINION

The jury convicted Candra Nicole Applegate of two third-degree felony offenses of bodily injury to a child and two first-degree felony offenses of serious bodily injury to a child. The trial court assessed punishment at confinement for ten years for each of the convictions for bodily injury to a child and confinement for twenty-six years for each of the convictions for serious bodily injury to a child. The trial court sentenced Appellant and ordered that the sentences run concurrently. Appellant challenges all four of her convictions on sufficiency grounds. She also

claims, in all four appeals, that improper comments by the trial judge fundamentally harmed her case. We affirm all four of her convictions.

## I. *The Charged Offenses*

The grand jury, in two separate indictments, alleged that Appellant intentionally or knowingly caused her child, T.L.W., to suffer (1) serious bodily injury when Appellant fractured T.L.W.'s leg and (2) bodily injury when Appellant fractured T.L.W.'s arm. The grand jury also alleged in a third indictment that Appellant intentionally or knowingly caused another of her children, W.L.W., to suffer bodily injury when she fractured his arm. The grand jury alleged, in the indictments, that the injuries were sustained by "manner and means unknown to the Grand Jury." The grand jury also indicted Appellant on a fourth offense, alleging that she intentionally or knowingly, by omission, caused serious bodily injury to T.L.W. when Appellant failed "to provide the child with medical care." As T.L.W.'s mother, Appellant had a statutory duty to ensure that T.L.W. received medical care.

A person commits an offense if she "intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child" serious bodily injury or bodily injury. TEX. PENAL CODE ANN. § 22.04(a)(1), (3) (West Supp. 2014). If the person causes serious bodily injury, then the offense is a felony of the first degree. *Id.* § 22.04(e). The offense is a felony of the third degree if the person causes bodily injury. *Id.* § 22.04(f). For the State to prove the offense of serious bodily injury caused by omission, a defendant must have "a legal or statutory duty to act." *Id.* § 22.04(b)(1). Appellant pleaded not guilty to all four offenses, and the State prosecuted all four offenses in one trial.

2

## II. *Evidence at Trial*

In October 2010, Appellant and Daniel Wright had twin babies: T.L.W., a girl, and W.L.W., a boy. Nine months later, Appellant took her twins to see Dr. Justin Smith for a physical checkup.

### A. *Dr. Smith's Testimony*

Dr. Smith noticed a bruise on T.L.W.'s left leg and ordered an X-ray. The X-ray revealed fractures above and below T.L.W.'s knee. Dr. Smith then ordered a full skeletal survey, which is a series of X-rays of the entire body, because he had "a high suspicion for abuse" and "injury to the child." The full skeletal survey revealed that T.L.W. had multiple broken bones. Appellant claimed the injuries had been caused by "lifting the baby by one leg to change [her] diaper." Dr. Smith ordered a full skeletal survey of W.L.W. as well, and that survey also revealed numerous fractured bones. T.L.W. and W.L.W. had a combined total of fifteen fractured bones. Dr. Smith testified that the twins did not show signs of osteogenesis imperfecta or brittle bone syndrome.[1]

### B. *Dr. Dumas's Testimony*

Doctor Michel Dumas, a radiologist, interpreted the full body skeletal surveys. Dr. Dumas opined that, in cases of children under one year of age, an "abnormal skeletal survey . . . raises a suspicion of child abuse." He held that opinion because such children are not "able to walk and run and play and jump off of things." He also explained that "there's got to be some good explanation for how that child had a force that could break a bone applied to one of its limbs or bones." Dr. Dumas then described T.L.W.'s and W.L.W.'s injuries.

---

[1]Osteogenesis imperfecta is a condition that causes brittle bones and can increase the likelihood of broken bones from even minor trauma.

T.L.W.'s left arm had several fractures in it. Dr. Dumas believed the injuries occurred "at least several days," and in some cases, many weeks, prior to the X-rays being taken. He agreed that the fractures were caused by a "twisting motion of tremendous force" or a "snapping motion of tremendous force," but he could not explain exactly how the injuries occurred. T.L.W.'s right femur had also been fractured; the wound had healed with a 30-degree bend in it so that the leg was now abnormally shaped. Dr. Dumas testified that, if the injury had received prompt medical care, the injury would not have healed with a "permanent angular deformity." Finally, he agreed that the wound caused protracted loss of the use of the limb.

Dr. Dumas also described "corner fractures" found in T.L.W.'s left leg. Corner fractures are specific for child abuse because they come "from a twisting injury or a pulling injury that you would typically only see in a situation where a child is maybe swung by their leg or having their leg twisted with such force as to induce pain." Dr. Dumas agreed that there is "a tremendous amount of physical force" needed "to cause a corner fracture." Dr. Dumas believed the corner fractures suffered by T.L.W. were "not accidental trauma" and were not the result of horseplay. Dr. Dumas remarked that T.L.W. had "the most dramatic corner fractures" that he had ever seen, or heard of, in medical case studies; he also agreed that an adult woman could inflict such injuries. Dr. Dumas explained that "every textbook and research [study] says that [corner fractures are] highly specific for child abuse."

Dr. Dumas then testified that W.L.W. had also suffered four corner fractures in his legs. Furthermore, W.L.W.'s right hand exhibited an injury at least three to four weeks old that, if seen in an adult, Dr. Dumas opined would be consistent with a hammer striking the hand. Dr. Dumas described the injury as "a very unusual

4

fracture for a child." W.L.W. had also suffered a fracture in his left forearm that appeared to be about a month old. Dr. Dumas opined that W.L.W.'s injuries were not accidental.

### C. Ms. Brooks's and Ms. Cosby's Testimony

Julia Elaine Brooks, Daniel's mother and the twins' grandmother, acknowledged that someone had abused the twins. Elaine indicated that only Daniel or Appellant could have been responsible for the abuse. Elaine explained that M.C., Appellant's two-year-old daughter and the twins' half-sister, lived with her and her husband, George Brooks, after doctors discovered that M.C. had a broken collarbone and had substantial bruises all over her body.[2] Elaine never saw Daniel or Appellant be "physical" with M.C. But when Elaine and George would drive M.C. by Appellant and Daniel's home on the way to drop her off at school, M.C. would become terrified. M.C. would beg them not to return her to Appellant and Daniel. George corroborated this testimony.

Ashly Cosby was Appellant's cousin by marriage, and she knew Appellant and the twins well. She noticed that "[a] lot of times" the twins had bruises on their bodies. Appellant and Daniel claimed that the twins' cribs caused the injuries. Cosby let Appellant use a mesh playpen for the twins to sleep in because it never caused bruises on Cosby's children. Nevertheless, the twins continued to have bruises.

Cosby testified that Appellant stayed at home to take care of her twins until Appellant lost custody of them. But Daniel worked during that time period. Appellant admitted to Cosby "that Daniel was never alone with the children except on a few rare occasions." Appellant also indicated that Daniel did not interact much with the twins. In contrast, Appellant "was with the twins all the time." Cosby

---

[2]The grand jury indicted Appellant for intentionally or knowingly causing bodily injury to M.C., but the trial court granted an instructed verdict as to that charge and it is not a subject of this appeal.

reviewed pictures of the twins, which were taken in the months prior to July 2011; she pointed out various bruises on their bodies and faces. After the twins were removed from Appellant and Daniel's custody, Cosby took care of the twins for a couple of months. During those months, Cosby never recalled the twins having any bruises.

Cosby agreed that Appellant never seemed like she was not "trying her best," and Cosby never saw Appellant exhibit violent behavior toward the children. Cosby felt comfortable enough to leave her own children with Appellant on a "handful" of occasions—meaning less than ten times. Cosby observed that Daniel did not seem comfortable with the twins and that M.C. "always seemed very afraid of him." Cosby recalled that Daniel was alone with the twins once when she and Appellant left one evening to walk at the track.

### D. Testimony of Twins' Father and of Ranger Parker

Daniel believed that Appellant suffered from post-partum depression after the birth of the twins. He testified she failed to take her prescribed medication and appeared depressed and "stressed out." Daniel claimed that, for the first nine months of the twins' lives, he worked multiple jobs, and Appellant was with the twins "24 and 7." Once while Daniel was at work, Appellant called him eight or nine times and asked him to return home because she could not care for the children. On one occasion, Daniel came home for lunch and found W.L.W. lying on the ground; "his right foot was split open pretty good." Daniel remarked that the cut was so deep that it "looked like maybe it was to the bone." Appellant appeared unaware of this serious injury until Daniel brought it to her attention. In response, she told Daniel dry skin caused the wound.

On another occasion, Appellant called Daniel at work because M.C. was "unruly and screaming, yelling." Daniel went home to find M.C., hiding in her

6

room, with a handprint on the side of her face; M.C. was crying and screaming. Daniel also noticed swelling and knots on W.L.W.'s body at various times. When he questioned Appellant, Appellant said M.C. or a toy had caused the injuries. Daniel testified about a specific occasion when he had T.L.W. on his shoulders and she threw herself back. He had to hold onto her by one leg as he grabbed her with his other arm. T.L.W. was shaken and startled but did not "yell out and scream in pain." He said that T.L.W. was not injured at that time.

Daniel admitted that the twins had been abused. He further admitted that only Appellant or he could have caused the twins' injuries, but he denied that he caused any of their injuries. He said that the only other person that could have injured the twins "would be [Appellant]." Shortly after the twins' injuries were discovered and they had been removed from Daniel and Appellant's custody, Daniel left a message on Appellant's phone stating that he was sorry and "[t]his is all my fault." Daniel explained that he apologized for their relationship ending and Appellant being upset. He also said he was "[e]xtremely upset to the point of tears" when he learned of the twins' injuries.

Michael Parker, of the Texas Rangers, investigated the twins' injuries. As part of his investigation, he interviewed Daniel. Daniel told Ranger Parker that he was never physically abusive or violent with the twins. Daniel also claimed that he was never physically abusive or violent with M.C. Daniel rejected the notion that M.C. was afraid of him. Daniel said that he loved her and thought she was a wonderful child.

Ranger Parker testified that he learned that Daniel was sometimes alone with the twins and M.C. This situation occurred when Appellant ran errands or walked at the track in the evenings. Ranger Parker also learned that Appellant had told Dr. Smith that she had never left the twins alone with Daniel. Dr. Smith also testified

7

that Appellant had told him she had never left the twins or M.C. alone with Daniel. Ranger Parker testified that either Appellant or Daniel or both Appellant and Daniel were the only people that could have inflicted the twins' injuries. He also thought that Appellant should have noticed the twins' numerous bone fractures.

### III. *Standard of Review*

We review the sufficiency of the evidence under the standard of review in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact is the sole judge of the weight and credibility of the evidence. *Brooks*, 323 S.W.3d at 899 (citing *Jackson*, 443 U.S. at 319, 326). A reviewing court may not reevaluate the weight and credibility of the evidence and substitute its own judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). The reviewing court must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

### IV. *Discussion and Analysis*

Appellant first challenges, in her four appeals, the sufficiency of the evidence to support her convictions. In her second issue in each appeal, Appellant argues that the trial court's comment about her "boilerplate" rights, such as her presumption of innocence and her right against self-incrimination, fundamentally harmed her

because it "de-emphasiz[ed]" the importance of those rights. We will address her sufficiency issues first.

### A. *Issue One: Sufficiency of the Evidence*

Appellant advanced three arguments under her sufficiency challenges. She first argues the evidence indicated "that Appellant alone, Daniel Wright alone, or the two of them in conjunction in all likelihood, caused" the injuries to the children. She claims the jury's finding that Appellant individually caused the injuries was not rational. Appellant concludes that, because the State did not include an instruction on the law of parties in the jury charge, the jury was precluded from finding her guilty of the offenses charged.

### 1. *Appellant's First Sufficiency Argument*

The grand jury alleged that Appellant was responsible for the injuries to her twins. The State did not assert that Appellant and Daniel jointly caused the twins' injuries. Rather, the State argued that Appellant caused the injuries, and she admitted that she alone could have committed the offenses.

Serious bodily injury is a "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." PENAL § 1.07(a)(46). Injury to a child is a result-oriented offense that requires a mental state that relates not to the specific conduct but to the result of that conduct. *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985). A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result. PENAL § 6.03(a) (West 2011). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id*. § 6.03(b). In a circumstantial evidence case, it is not necessary that every fact point directly and independently to the

9

appellant's guilt; it is sufficient if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

Testimony from medical experts that "significant force" and a "great deal of force" were used to cause a child's injuries is sufficient evidence to prove intent to cause serious bodily injury. *Morales v. State*, 828 S.W.2d 261, 265 (Tex. App.— Amarillo 1992), *aff'd*, 853 S.W.2d 583 (Tex. Crim. App. 1993); *see also Sandoval v. State*, No. 14-12-00879-CR, 2014 WL 3870504, at *6 (Tex. App.—Houston [14th Dist.] Aug. 7, 2014, no pet.) (mem. op., not designated for publication). In addition, a jury may infer intent or knowledge based on the occurrence of a previous similar injury. *See Morgan v. State*, 692 S.W.2d 877, 881–82 (Tex. Crim. App. 1985). Evidence that a defendant was alone with a child when the injury occurred provides an inference that the defendant caused the injuries sustained. *See Nadal v. State*, 348 S.W.3d 304, 315 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Flores v. State*, 102 S.W.3d 328, 335–36 (Tex. App.—Eastland 2003, pet. ref'd). And avoidance of Child Protective Services allows for an inference of actions that constitute knowing activity. *See Sandoval*, 2014 WL 3870504, at *6.

Dr. Dumas agreed that the fractures were caused by a "twisting motion of tremendous force" or a "snapping motion of tremendous force." T.L.W. suffered protracted loss of use of her leg because she did not receive prompt medical attention after she sustained the injury. Dr. Dumas further testified that the twins' injuries occurred at different times with a range from days to more than a month before the X-rays were taken. Appellant was with her twins "24 and 7," while Daniel was rarely, if ever, alone with the twins.

Daniel testified about occasions when Appellant called him to say that she could not care for the children; he would come home to find the twins or M.C.

10

injured. Cosby testified that Appellant rarely took her twins out in public. When Cosby asked her why, Appellant "said that she felt like she couldn't go in public very often with the kids because CPS was always called." Appellant then went on to acknowledge that she was nervous "[b]ecause the kids have bruises." We also note that M.C. had previously suffered an unexplained broken collarbone and had bruising all over her body. With this evidence and the other evidence we have outlined, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant intentionally or knowingly caused not only bodily injury but also serious bodily injury to both of her twins.

## 2. *Appellant's Second Sufficiency Argument*

Appellant claims that she could not be expected to know that T.L.W. needed medical care because it took X-rays to discover her injuries. We agree with the State's contention that this argument is without merit in light of our conclusion that the evidence was sufficient to support the finding that Appellant knowingly or intentionally caused bodily injury and serious bodily injury to T.L.W. Dr. Dumas testified that T.L.W.'s right femur had been fractured at least several weeks prior to its discovery and that it had healed with a "permanent angular deformity," due in part to the delay in receiving medical attention. *See Thompson v. State*, 227 S.W.3d 153, 161 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (failure to provide medical care to the child aggravated the injury and hindered recovery).

Cosby testified that, when T.L.W. was six or seven months old, she would cry and appeared to be in pain when someone would touch her leg. Jena Clendenen, Appellant's half-sister testified that T.L.W.'s right leg was not straight; and Ranger Parker said Appellant should have noticed that her babies had as many bone fractures as they did. *See Johnston v. State*, 150 S.W.3d 630, 636 (Tex. App.—Austin 2004, no pet.) (considering as factors the victim's "sickly appearance, distended abdomen,

11

and inability to hold himself up or hold down food and water" in the days prior to receiving medical care in finding the evidence sufficient to support a conviction for causing serious bodily injury by failure to render care to a child). T.L.W.'s deformity in her leg was apparent without X-rays. Appellant knew or should have known of the extent of T.L.W.'s injuries and of T.L.W.'s need for medical attention. Appellant's failure to provide medical care caused T.L.W. serious bodily injury.

### 3. Appellant's Third Sufficiency Argument

Appellant next argues there is no evidence from a grand jury member to show that the alleged causation by "manner and means unknown to the Grand Jury" was actually unknown. Appellant claims that without a grand jury member to testify about the "manner and means unknown to the Grand Jury," there is insufficient evidence to support Appellant's convictions. Appellant claims that the "manner and means unknown" element is not met because the evidence showed that the injuries were caused by "some sort of twisting" motion.

Appellant cites two cases to support her argument: *Sanchez v. State* and *Malik v. State*. *Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Both cases address jury instruction issues. *Sanchez* involved an indictment that alleged a "manner and means unknown," but evidence adduced at trial narrowed the range of causation theories. *Sanchez*, 376 S.W.3d at 770. *Malik* involved a jury instruction that included a definition concerning the defendant's detention, but that issue was one of evidence and not an element of the offense. *Malik*, 953 S.W.2d at 240. Appellant has not challenged the jury instructions given in this case, and *Sanchez* and *Malik* are inapplicable to the sufficiency issue that has been raised by Appellant.

We have previously explained that the State provided sufficient evidence to convict Appellant of all four offenses. Dr. Dumas testified that the injuries were not

accidental. He also opined that the injuries were caused by "tremendous force" and were likely the result of abuse. But Dr. Dumas could not testify exactly how the injuries occurred. As Appellant outlined in her brief, "No one [at trial] could testify to any degree of medical certainty as to *how* the fracture[s] occurred" (emphasis added). A rational factfinder could have found beyond a reasonable doubt that the manner and means by which Appellant inflicted the injuries to her twins were unknown. Therefore, there was no need for testimony from a member of the grand jury. We overrule Appellant's first issue in each appeal.

### B. Issue Two: Alleged Improper Judicial Comments

Appellant argues that comments by the trial court about her "boilerplate" rights, such as her presumption of innocence and her right against self-incrimination, fundamentally harmed her because it "de-emphasiz[ed]" the importance of those rights. Most complaints on appeal must be preserved at the trial level by a timely request for relief. *Unkart v. State*, 400 S.W.3d 94, 98 (Tex. Crim. App. 2013). The procedure to preserve error is "(1) to object when it is possible, (2) to request an instruction to disregard if the prejudicial event has occurred, and (3) to move for a mistrial if a party thinks an instruction to disregard was not sufficient." *Id.* at 99 (quoting *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004)) (internal quotation marks omitted). Only if a timely objection *would not have prevented harm* and an instruction to disregard *would not have cured the harm*, may a party then skip those steps and go straight to a request for a mistrial. *Id.*

The trial court informed the parties in this case, outside the presence of the jury, of its intention to read to the jury the unique portion of each separate charge and of its intention to only read the "boilerplate" portion, common to each charge, once. The State's attorney remarked to the trial court, "I believe it's the best practice that the Court reads each jury charge in its entirety[.]" The trial court had an off-

the-record discussion with counsel at the bench without the jury being present and then had the jury brought into the courtroom. The trial judge then read the unique portion of each charge. He stopped at various spots to indicate that he would read the portion of the jury charge common to all the offenses once, at the end.

Prior to reading the portion common to each offense, which the trial court called the "boilerplate" portion, the trial court again had an off-the-record discussion with trial counsel at the bench. The trial court then told the jury:

> I am now going to read to you what we refer to amongst us lawyers as the boilerplate language. It is still very important, but it's the same language in each charge and so I am only going to read it once but it is in each of these charges that you will consider today.

At no point in time did Appellant object. When the State indicated its preference to read each charge in its entirety, a method that would likely have avoided the use of the phrase "boilerplate" entirely, Appellant's counsel said nothing in response. Appellant's counsel never requested an instruction to disregard the comment that referred to "boilerplate" rights. Appellant's counsel also never moved for a mistrial. And, immediately after the use of the term "boilerplate," the trial court implored the jury that Appellant's rights were "still very important" and applied to every single offense charged. The trial court then went on to thoroughly outline and describe Appellant's rights and the State's burden of proof. We conclude that Appellant failed to preserve error because he failed to object when the trial court decided to read the jury charge in the manner described. He also failed to object when the phrase "boilerplate" was mentioned. *See* TEX. R. APP. P. 33.1(a); *Unkart*, 400 S.W.3d at 99. We overrule Appellant's second issue in each appeal.

14

## V. *Conclusion*

We have reviewed the record and hold there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Appellant committed two first-degree felony offenses of causing serious bodily injury to a child. We also hold there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Appellant committed two third-degree felony offenses of causing bodily injury to a child. We further hold that Appellant waived any complaint about the comments by the trial court.

## VI. *This Court's Ruling*

We affirm all four judgments of the trial court.

MIKE WILLSON

JUSTICE

September 30, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

15



11TH COURT OF APPEALS
EASTLAND, TEXAS
JUDGMENT

Candra Nicole Applegate,

\* From the 259th District
Court of Jones County,
Trial Court No. 010734.

Vs. No. 11-14-00005-CR

\* September 30, 2015

The State of Texas,

\* Memorandum Opinion by Willson, J.
(Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.)

This court has inspected the record in this cause and concludes that there is no error in the judgment below. Therefore, in accordance with this court's opinion, the judgment of the trial court is in all things affirmed.