**MODIFY and AFFIRM; and Opinion Filed August 7, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00075-CR

**WINTER KAY ARTHUR, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2**
**Kaufman County, Texas**
**Trial Court Cause No. 16-30605-CC2-M**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Osborne

Winter Kay Arthur[1] appeals the trial court's final judgment convicting her of driving while her license was invalid enhanced by a prior conviction. *See* TEX. TRANSP. CODE ANN. § 521.457. The jury found Arthur guilty and the enhancement true and assessed her punishment at 180 days of confinement and a fine in the amount of $1,000. Arthur raises four issues on appeal, arguing: (1) the trial court erred when it denied her motion to suppress; (2)(a) the trial court erred when it denied her request for a jury instruction on her affirmative defense and (b) the evidence is insufficient to support her conviction; (3) the trial court erred when it denied her request to include a jury instruction on the issue of spoliation of evidence; and (4) the physical layout and

---

[1] The record also refers to Arthur as "Winter Kay Wilkerson" and "Winter Kay Kutscherousky." The record shows that at the time of the offense, Arthur identified herself to the police as "Winter Kay Wilkerson." Further, the record shows that Kutcherousky was Arthur's maiden name and, at trial, she advised the trial court that she had gotten divorced and was now using her maiden name.

arrangement of the courtroom denied her a fair and impartial trial. We conclude the evidence is sufficient to support Arthur's conviction, the trial court did not err, and Arthur has failed to preserve for appellate review her argument that she was denied a fair and impartial trial. Also, we modify the trial court's judgment to reflect that Arthur was not placed on community supervision. The trial court's judgment is affirmed as modified.

## I. FACTUAL AND PROCEDURAL CONTEXT

On August 26, 2016, the Texas Department of Public Safety mailed "Winter Kay Wilkerson" an order of suspension, advising that her driver's license and driving privileges were suspended until February 25, 2017 "because [she] refused to provide a specimen of blood or breath following an arrest for an offense prohibiting the operation of a motor vehicle . . . while intoxicated." The order of suspension was mailed to 7114 Broken Bow Drive, Mabank, Texas 75156.

On December 9, 2016, Officer David Crouch II observed a red Ford Focus speeding and fail to signal a lane change, so he made a traffic stop. Arthur was the driver of the vehicle. When Officer Crouch asked Arthur for her driver's license, Arthur stated that she had an occupational license.[2] However, Arthur did not provide the officer with an occupational license or a court order granting her one. Instead, she gave him a driver's license listing Arthur's last name as "Wilkerson" and her address at Broken Bow Drive. Arthur also told Officer Crouch that "she was moving, and she lived with her mother." After learning that Arthur's driver's license was suspended, Officer Crouch arrested her for driving while her license was invalid. Also, Officer Crouch issued Arthur two warnings for the traffic offenses that he had observed. During these events, Arthur gave

---

[2] The Texas Transportation Code provides that "[a] person whose license has been suspended for a cause other than a physical or mental disability or impairment or a conviction of an offense under [s]ections 49.04–49.08 [of the Texas Penal Code] may apply for an occupational license." TRANSP. § 521.242(a). An occupational license must specify the hours of the day and days of the week during which the person may operate a motor vehicle, the reasons for which the person may operate a motor vehicle, the areas or routes of travel permitted, whether the person is restricted to the operation of vehicle equipped with an ignition interlock device, and whether the person must submit to periodic testing for alcohol or a controlled substance. TRANSP. § 521.248(a).

Officer Crouch different stories to explain her license status, i.e, she had contacted her lawyer and was in the process of obtaining an occupational license, she had paid the surcharge, and she had to "finish defensive driving." Further, Arthur advised the officers that her address was at 201 Wells Circle, Mabank, Texas.

After arresting Arthur, the police officers made an inventory of her vehicle. While doing so, Officer Crouch saw a folder on the back seat of the vehicle that contained paperwork relating to the suspension of Arthur's driver's license. He stated that he saw a receipt for a surcharge stapled "on the return that stated her [driver's] license was still suspended." On the vehicle impound record the police listed the papers as "misc. documents" and the registered owner of the vehicle as "Robert L. Weber." Detective Sergeant Colter Leftwich took photographs of the scene and stated that he also saw documents stating that Arthur's driver's license had been suspended as well as an "ALR hearing refusal."

During his investigation, Det. Sgt. Leftwich was able to obtain paperwork relating to the suspension of Arthur's driver's license, but he did not find anything relating to her having obtained an occupational license. Also, subsequent to Arthur's arrest, the police department's database crashed and case files, case photos, and "finger photos" were lost, including the photographs of the documents in the vehicle Arthur was driving.

Arthur was charged by information for the offense of driving while her license was invalid. *See* Transp. § 521.457(a), (f). During the charge conference, Arthur requested jury instructions on the affirmative defense of no receipt of actual notice and spoliation of the evidence, which the trial court denied. The jury found Arthur guilty and the enhancement true, and assessed her punishment at 180 days of confinement and a fine in the amount of $1,000.

## II. SUFFICIENCY OF THE EVIDENCE

In the second part of issue two, Arthur argues the evidence is insufficient to support her conviction. She claims that the State was required to prove scienter and there is no evidence that she received notice that her driver's license had been suspended, so her conviction for driving while her license was invalid cannot stand. The State responds that the evidence is sufficient to support the jury's verdict because the record does not show when Arthur moved from the residence listed on the order of suspension and Arthur claimed she had or was attempting to obtain an occupational license, which was in effect an admission that she knew her driver's license had been suspended.

### A. Standard of Review

When reviewing the sufficiency of the evidence, an appellate court considers all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *State v. Bolles*, 541 S.W.3d 128, 134–35 (Tex. Crim. App. 2017); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.). An appellate court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *See Jackson*, 443 U.S. at 319, 326; *Bohannan v. State*, 546 S.W.3d 166, 178 (Tex. Crim. App. 2017); *Brooks*, 323 S.W.3d at 899. All evidence, whether properly or improperly admitted, will be considered when reviewing the sufficiency of the evidence. *See McDaniel v. Brown*, 558 U.S. 120 (2010) (per curiam); *Lockhart v. Nelson*, 488 U.S. 33, 41–42 (1988); *Jackson*, 443 U.S. at 319.

### B. Applicable Law

Under Texas law, a person "may not operate a motor vehicle on a highway in this state unless the person holds a driver's license under [Chapter 521 of the Texas Transportation Code]."

TRANSP. § 521.021.  To support a conviction for driving while license invalid, the evidence must establish beyond a reasonable doubt that a person: (1) operated a motor vehicle; (2) on a highway; and (3) during a period that the person's driver's license or privilege was suspended or revoked under any Texas law.[3]  *See* TRANSP. § 521.457(a)(2).  There is no culpable mental state for the offense of driving while license invalid–it is a strict liability statute.  *See Featherston v. State*, No. 05-96-01126-CR, 1998 WL 53925, at *2 (Tex. App.—Dallas Feb. 11, 1998, no pet.) (not designated for publication) (discussing a former version of section 521.457); *Harrison v. State*, 421 S.W.3d 39, 42 (Tex. App.—Waco 2013, pet. ref'd) (discussing former version of the statute); *Allen v. State*, 659 S.W.2d 925, 929 (Tex. App.—Fort Worth 1983), *rev'd on other grounds*, 681 S.W.2d 38 (Tex. Crim. App. 1984); *Clayton v. State*, 652 S.W.2d 810, 811–12 (Tex. App.—Amarillo 1983, no pet.) (discussing article 6687b, section 34 of the civil statues which was codified in Texas Transportation Code section 521.457 and concluding offense is one where the legislature intended to dispense with culpable mental state as element of offense); *see also* TEX. PENAL CODE ANN. § 6.02.

### C.  *Application of the Law to the Facts*

We construe Arthur's argument to be that there is no evidence she intentionally or knowingly operated a vehicle while her driver's license was invalid.  We note that the information charged Arthur with "*intentionally or knowingly* operating a motor vehicle on a public highway during a period that [Arthur's] driver's license was cancelled, suspended, or revoked" and the trial court's charge states that "[a] person commits an offense if she *knowingly or intentionally* operates a motor vehicle upon a public highway during a period that the driver's license of said person was suspended and revoked under the provisions of Chapter 521 of the Texas Transportation Code."

---

[3]  We note that section 521.457 was amended in 2017.  However, the relevant portions of the statute remain the same with the exception that subsection (d) was amended to broaden the presumption of actual notice by changing the means of transmitting it from "mailed in accordance with law" to "sent in accordance with law."

(Emphasis added.) However, an appellate court's limited determination in a sufficiency review does not turn on how the jury was instructed. *See Musacchio v. United States*, 136 S. Ct. 709, 715 (2016) (discussing when jury charge incorrectly adds elements); *Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018). Rather, an appellate court measures the sufficiency of the evidence against the elements of the offense as defined by the hypothetically correct jury charge. *Ramjattansingh*, 548 S.W.3d at 546. A hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Ramjattansingh*, 548 S.W.3d at 546 (quoting *Malik v. State*, 953 S.W.2d 234, 238 (Tex. Crim. App. 1997)). The offense of driving while license invalid is a strict liability offense that does not require a culpable mental state. *See Featherston*, 1998 WL 53925, at *2; *Harrison*, 421 S.W.3d at 42; *Allen*, 659 S.W.2d at 929; *Clayton*, 652 S.W.2d at 811–12. Accordingly, measuring the sufficiency of the evidence against the hypothetically correct jury charge, we conclude the evidence was sufficient to support Arthur's conviction because the State was not required to prove a culpable mental state. Arthur does not challenge the sufficiency of the evidence to support any other elements of the offense.

The second part of issue two is decided against Arthur.

### III. MOTION TO SUPPRESS

In issue one, Arthur argues the trial court erred when it denied her motion to suppress. She contends the officer did not have probable cause to stop her because he failed to ensure the Lidar unit was properly operating and his testimony lacks credibility. The State responds that Arthur fails to challenge one of the two independent bases for the traffic stop and the totality of the circumstances shows that the officer had reasonable suspicion sufficient to justify the stop.

### A. Standard of Review

In reviewing a trial court's ruling on a motion to suppress, an appellate court applies a bifurcated standard of review. *See Wilson v. State*, 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). An appellate court gives almost total deference to the trial court's determination of historical facts but conducts a de novo review of the trial court's application of the law to those facts. *See Wilson*, 311 S.W.3d at 458; *Carmouche*, 10 S.W.3d at 327. As the sole trier of fact during a suppression hearing, a trial court may believe or disbelieve all or any part of a witness's testimony. *See Wilson*, 311 S.W.3d at 458; *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). An appellate court examines the evidence in the light most favorable to the trial court's ruling. *See Wilson*, 311 S.W.3d at 458; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). A trial court will abuse its discretion only if it refuses to suppress evidence that is obtained in violation of the law and that is inadmissible under Texas Code Criminal Procedure article 38.23. *See Wilson*, 311 S.W.3d at 458. When there are no written findings explaining the factual basis for the trial judge's decision, an appellate court implies findings of fact that support the ruling so long as the evidence supports those implied findings. *Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011).

### B. Applicable Law

A police officer may make a warrantless stop on reasonable suspicion of a traffic violation. *See Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2016); *Derichsweiler v. State*, 348 S.W.3d 906, 913–14 (Tex. Crim. App. 2011). The reasonable suspicion standard requires only "some minimal level of objective justification" for the stop and disregards an officer's actual subjective intent. *See United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Brodnex v. State*, 485 S.W.3d 432, 437 (Tex. Crim. App. 2016).

A police officer has reasonable suspicion if he has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to believe that the person detained is, has been, or soon will be engaged in criminal activity. *See Brodnex*, 485 S.W.3d at 437; *Jaganathan*, 479 S.W.3d at 247; *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013). These articulable facts must amount to more than a mere hunch or suspicion. *See Brodnex*, 485 S.W.3d at 437; *Abney*, 394 S.W.3d at 548.

### C. Application of the Law to the Facts

First, we address Arthur's argument that the officer did not have "probable cause" to stop her. Initially, we note that the State did not need to show that Officer Crouch had probable cause to stop Arthur. Rather, the State needed to show that Officer Crouch had reasonable suspicion of a traffic violation. *See Jaganathan*, 479 S.W.3d at 247; *Derichsweiler*, 348 S.W.3d at 913–14. The record shows that Officer Crouch articulated two bases for stopping Arthur: (1) the Lidar unit indicated that Arthur's vehicle was exceeding the speed limit; and (2) he observed Arthur fail to signal a lane change and he saw Arthur "hitting the improved shoulder." On appeal, Arthur fails to contest one of the two bases supporting reasonable suspicion, arguing only that Officer Crouch did not have "probable cause" to stop her because he failed to ensure the Lidar unit was properly operating. Similarly, during the hearing on her motion to suppress, Arthur's counsel clarified that her issue was the "reliability of the equipment [i.e., the Lidar unit,] not the stop." The State responded, "I was just going to show the [trial] court [the video of] the stop because my understanding was the issue was the stop. But if the issue's just the equipment for that. . . . Then I will pass the witness at this time." Further, there is evidence in the record to support the other unchallenged basis. Officer Crouch testified that he observed Arthur fail to signal a lane change and he saw her vehicle "hitting the improved shoulder."

Next, we address Arthur's argument that the record shows that Officer Crouch's testimony was not credible because he testified that he observed "the facts elicited" about Arthur's vehicle at night from a distance of 300 to 400 yards. The record shows that Officer Crouch testified only that Arthur's vehicle triggered the "the device" from about 300 to 400 yards away and the vehicle behind her was "approximately 50." Also, during the hearing on the motion to suppress, the State offered and the trial court admitted the video from the officer's dashcam into evidence, which also depicts the distance between Arthur and the officer and would allow the fact finder to determine whether the officer misspoke as to the applicable unit of measurement. Nevertheless, as the sole trier of fact during the suppression hearing, the trial court could believe or disbelieve all or any part of Officer Crouch's testimony. *See Wilson*, 311 S.W.3d at 458; *Ross*, 32 S.W.3d at 855. The trial court is the sole judge of credibility and the weight to be given to the officer's testimony. *See Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007).

We conclude the trial court did not err when it denied Arthur's motion to suppress. Issue one is decided against Arthur.

## IV. JURY INSTRUCTIONS

In the first part of issue two and in issue three, Arthur argues the trial court erred when it denied her requests for jury instructions on her affirmative defense of no receipt of actual notice and a sanction for the spoliation of the evidence.

### A. Standard of Review

An appellate court reviews a trial court's decision not to submit an instruction in the jury charge for an abuse of discretion. *Wesbrook v. State*, 29 S.W.3d 103, 121–22 (Tex. Crim. App. 2000). A review of alleged jury-charge error involves a two-step analysis. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). First, an appellate court must determine whether error actually exists in the charge.

*Ngo*, 175 S.W.3d at 743–44; *Middleton*, 125 S.W.3d at 453. Second, if error does exist, an appellate court must review whether sufficient harm resulted from the error to require reversal. *Ngo*, 175 S.W.3d at 743–44; *Middleton*, 125 S.W.3d at 453.

### B. No Receipt of Actual Notice

In the first part of issue two, Arthur argues the trial court erred when it denied her request for a jury instruction on her "affirmative defense of lack of actual notice." The State responds that there is no evidence to support the submission of the affirmative defense to the jury. Rather, the State contends that the record is replete with evidence that Arthur received actual notice.

### 1. Applicable Law

The issue of the existence of an affirmative defense is not submitted to the jury unless evidence is admitted supporting the affirmative defense, and the trial court shall charge that the defendant must prove the affirmative defense by a preponderance of the evidence. *See* PENAL § 2.04. Further, when the law establishes a presumption with respect to any fact, then, if there is sufficient evidence of the facts that give rise to the presumption, the issue of the existence of the presumed fact must be submitted to the jury, unless the trial court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact. *See* PENAL § 2.05.

Section 521.457(d) of the Texas Transportation Code provides an affirmative defense and a presumption, stating:

> Except as provided by [s]ubsection (c), it is an **affirmative defense** to prosecution of an offense, other than an offense under [s]ection 521.341, that the person did not receive actual notice of a cancellation, suspension, revocation, or prohibition order relating to the person's license. For purposes of this section, actual notice is **presumed** if the notice was mailed in accordance with law.

(Emphasis added.) Act of May 24, 2017, 85th Leg., R.S., ch. 1079, § 4, 2017 Tex. Gen. Laws 4225, 4226 (current version at TEX. TRANSP. CODE. ANN. § 521.457) (during the 2017 legislative

–10–

session, the Texas Legislature amended subsection (d) of section 521.457 of the Texas Transportation Code to change the presumption of actual notice from it was "mailed in accordance with law" to "sent in accordance with law.").

Error in the jury charge is subject to a harmless-error analysis. *See Chambers v. State*, No. PD-0771-17, 2019 WL 2612770, at *3 (Tex. Crim. App. June 26, 2019). If the defendant timely objected at trial to the jury-charge error, the reviewing court will reverse upon a showing of "some harm" to the defendant. *See* TEX. R. APP. P. 44.2; *Chambers*, 2019 WL 2612770, at *3. This means that the presence of any harm, regardless of degree, is sufficient to require a reversal. *See* TEX. R. APP. P. 44.2; *Chambers*, 2019 WL 2612770, at *3.

### 2. Application of the Law to the Facts

Arthur's argument on appeal does not distinguish between the affirmative defense and presumption included within section 521.457(d) of the Texas Transportation Code or the differing burdens of proof required by each. *Compare* PENAL § 2.04 (defendant must prove affirmative defense by preponderance of evidence) *with* § 2.05 (instruction on existence of presumed fact submitted to jury unless trial court satisfied evidence precludes finding beyond reasonable doubt). Accordingly, we construe her argument to challenge both the affirmative defense and the presumption contained in the statute.

First, we construe Arthur's argument to challenge the trial court's denial of her request for an instruction on the affirmative defense of no receipt of actual notice contained in section 521.457(d). Arthur contends that evidence was admitted showing that she did not receive actual notice because her address was different from the address to which the notice of suspension was mailed and the State failed to produce evidence that she had "actual knowledge" her license was

–11–

suspended on the day of her arrest.[4]  Assuming, without deciding, the trial court erred when it denied Arthur's request for a jury instruction on her affirmative defense of no receipt of actual notice, we must still review whether that alleged error was harmful error.

The record shows that Arthur requested the following jury instruction:

It is an affirmative defense to the offense of driving while license invalid that the person did not receive actual notice of a suspension relating to the person's license.

Also, the record shows that Arthur had some knowledge that her driver's license and driving privileges had been suspended.  When she was initially stopped by Officer Crouch, Arthur told him that she had an occupational license.  Then, during the course of the stop, Arthur gave Officer Crouch different stories to explain her license status, i.e, she had contacted her lawyer and was in the process of obtaining an occupational license, she had paid the surcharge, and she had to "finish defensive driving."  Further, both Officer Crouch and Detective Sergeant Leftwich testified they saw paperwork relating to the suspension of her driver's license in the back of the vehicle Arthur was driving.

In addition, although Arthur contends that she did not receive actual notice her license had been suspended because she had moved, there is nothing in the record showing when Arthur changed her address or that her address had changed before the notice was mailed.  The record shows that on August 26, 2019, the Texas Department of Public Safety mailed Arthur an order of suspension to 7114 Broken Bow Drive, Mabank, Texas 75156.  And, on December 9, 2016, approximately three months later, Arthur told Officer Crouch that "she was moving, and she lived with her mother" and that her address was at 201 Wells Circle, Mabank, Texas.  However, the

---

[4] As we discussed in our resolution of the second part of issue two, driving while license invalid is a strict liability offense and the State does not have to prove Arthur had actual knowledge that her license had been suspended. *See Featherston*, 1998 WL 53925, at *2; *Harrison*, 421 S.W.3d at 42; *Allen*, 659 S.W.2d at 929; *Clayton*, 652 S.W.2d at 811–12.  Also, we note that the statute states that the affirmative defense is applicable in situations where the defendant "did not receive actual notice."  As a result, it is unclear whether the affirmative defense introduces a lack of scienter as an element because the statute refers only to the "receipt" of the actual notice, not knowledge or understanding of the notice or suspension.  Further, the statute does not specify the manner in which the actual notice must be received.  Rather, the statute specifies only that actual notice is presumed in favor of the State if it was "mailed."  *See* Act of May 24, 2017, 85th Leg., R.S., ch. 1079, § 4, 2017 Tex. Gen. Laws 4225, 4226.  Nevertheless, for purposes of this appeal, we will assume, without deciding, the affirmative defense of no receipt of actual notice introduces an element of scienter.

–12–

driver's license that Arthur gave Officer Crouch at the time of the stop listed her address at the Broken Bow address. *See* TRANSP. § 521.054(b) (when person who has been issued a license moves to new address that person shall notify department of change not later than 30th day after change takes effect). Also, during the trial, a copy of Arthur's current driver's license was admitted into evidence. That driver's license was issued on March 16, 2017, approximately three months after her arrest, and lists her address at the Wells Circle address.

Further, the record shows that the jury instructions actually placed a higher burden of proof on the State than the statute required or Arthur's requested jury instruction would have imposed. If the jury had been instructed on the affirmative defense, Arthur would have had the burden to prove by a preponderance of the evidence that she did not receive actual notice of the suspension of her driver's license and driving privileges. *See* PENAL § 2.04; Act of May 24, 2017, 85th Leg., R.S., ch. 1079, § 4, 2017 Tex. Gen. Laws 4225, 4226. Instead, the trial court's jury charge shifted the burden of proof to the State and required the State to prove beyond a reasonable doubt that Arthur intentionally or knowingly operated a motor vehicle while her driver's license was suspended. Even under this higher burden of proof, the jury found that the State proved Arthur knew that her driver's license was suspended at the time of the offense.

Accordingly, we conclude that, assuming without deciding the trial court erred when it denied Arthur's request for a jury instruction on the affirmative defense of no receipt of actual notice, that alleged error was not harmful error. *See* TEX. R. APP. P. 44.2.

Second, we construe Arthur's argument to contend that the State was not entitled to an instruction on the statutory presumption. Arthur concedes that the State offered proof that the notice was mailed to her but appears to argue the State was not entitled to a jury instruction on the presumption of actual notice included within section 521.457(d) of the Texas Transportation Code because the State produced no evidence of the date the mailing took place. Because the State did

not receive a jury instruction on the presumption of actual notice and Arthur concedes the State offered proof that the notice was mailed to her, we need not address Arthur's argument that the State was not entitled to a jury instruction on the presumption of actual notice included within section 521.457(d) of the Texas Transportation Code.

The first part of issue two is decided against Arthur.

### C. Spoliation of the Evidence

In issue three, Arthur argues the trial court erred when it denied her request for a spoliation jury instruction.[5] Arthur complains that the following evidence was lost or destroyed: (1) "papers contained in the rear seat of [Arthur's] vehicle that pertained to [the] suspension [of her driver's license]"; and (2) "photographs [of the documents in her vehicle] which were made at the scene" and "would have permitted [Arthur] to reconstruct [the] documents." She contends that a spoliation instruction was necessary for the jury to determine the impact the missing documents and photographs had on the State's case against her. The State responds that the record reflects that the documents were not seized by the police from the vehicle, but were left in the vehicle, which was impounded for release to the owner. The State maintains that there is no evidence relating to the relationship of the vehicle's owner to Arthur, whether the vehicle was retrieved from impound, or whether Arthur's belongings remained in the vehicle or were returned to her. In addition, the State argues that the record does not indicate what the lost photographs depicted. Also, the State argues that there is no evidence the State acted in bad faith to deprive Arthur of the documents. The State contends that the requested jury instruction "improperly instructed the jury to apply a mandatory presumption against the State without [] designating [the] evidence the jury was to apply the presumption [to]."

---

[5] We note that Arthur cites several opinions in civil cases to support her spoliation argument.

### 1. Applicable Law

Spoliation of evidence concerns the improper loss or destruction of evidence. *See Guzman v. State*, 539 S.W.3d 394, 401 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *Torres v. State*, 371 S.W.3d 317, 319 (Tex. App.—Houston [1st Dist.] 2012, pet ref'd); *see also Rocha v. State*, No. 05-18-00161-CR, 2019 WL 1467964, at *7 (Tex. App.—Dallas Apr. 3, 2019, pet. filed) (mem. op., not designated for publication). In some instances, the State has a duty to preserve evidence in its possession and the violation of this duty may rise to the level of a due process violation under the Fourteenth Amendment. *See Zapata v. State*, 449 S.W.3d 220, 228 (Tex. App.—San Antonio 2014, no pet.). Any federal constitutional duty to preserve evidence is limited to evidence that might be expected to play a significant role in the suspect's defense. *See California v. Trombetta*, 467 U.S. 479, 488 (1984). Courts distinguish between two kinds of evidence: (1) material, exculpatory evidence and (2) potentially useful evidence. *See Illinois v. Fisher*, 540 U.S. 544, 547–48 (2004) (per curiam); *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988); *Trombetta*, 467 U.S. at 486–90; *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008); *State v. Rudd*, 871 S.W.2d 530, 532–33 (Tex. App.—Dallas 1994, no pet.). The difference between the two kinds of evidence affects a court's analysis of whether the State's failure to preserve that evidence violates a defendant's guarantee of due process of law. *See Burdick v. State*, 474 S.W.3d 17, 26 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

If the State fails to preserve material, exculpatory evidence, then the State has committed a due process violation. *See Youngblood*, 488 U.S. at 57–58; *Zapata*, 449 S.W.3d at 228–29. To meet the standard of constitutional materiality, evidence must: (1) possess an exculpatory value that was apparent before the evidence was destroyed; and (2) be of such a nature that the criminal defendant would be unable to obtain comparable evidence by other reasonably available means. *See Trombetta*, 467 U.S. at 488; *Zapata*, 449 S.W.3d at 229; *White v. State*, 125 S.W.3d 41, 43–

–15–

44 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). The State has a duty to preserve exculpatory evidence and its good or bad faith in failing to do so is irrelevant. *See Fisher*, 540 U.S. at 547–48; *Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010) (orig. proceeding). A criminal defendant must affirmatively show that the lost evidence was favorable and material to his defense. *See generally Guzman*, 539 S.W.3d at 402; *White*, 125 S.W.3d at 44.

When a criminal defendant can assert only that the lost or destroyed evidence might have exonerated him, the evidence in question is "potentially useful," as opposed to material and exculpatory. *See Ex parte Napper*, 322 S.W.3d at 238; *see also Luper v. State*, No. 05-15-00201-CR, 2016 WL 2756466, at *4 (Tex. App.—Dallas May 9, 2016, pet. ref'd) (mem. op., not designated for publication). When evidence is at best "potentially useful," then the criminal defendant must show "bad faith." *See Youngblood*, 488 U.S. at 58; *Ex parte Napper*, 322 S.W.3d at 231. Requiring a defendant to show bad faith on the part of the State limits the State's requirement to preserve evidence to reasonable bounds and confines it to the class of cases where the police themselves, by their conduct, indicate the evidence could form the basis for exonerating the defendant. *See Youngblood*, 488 U.S. at 58. "Bad faith" is more than being aware that one's action or inaction could result in the loss of evidence. *See Ex parte Napper*, 322 S.W.3d at 238. Bad faith involves an improper motive, such as personal animus against the criminal defendant or a desire to prevent the criminal defendant from obtaining potentially useful evidence. *See id.* A fact-finder must do more than simply disbelieve proffered evidence of good faith: There must be some evidence from which an inference of bad faith can be drawn. *See id.* The existence of a discovery request does not eliminate the necessity to show bad faith. *See Fisher*, 540 U.S. at 548; *Ex parte Napper*, 322 S.W.3d at 231. Unless a criminal defendant can show bad faith on the part of the police, the failure to preserve potentially useful evidence does not constitute a denial of due process. *See Youngblood*, 488 U.S. at 58; *Swearingen v. State*, 303 S.W.3d 728, 734 (Tex. Crim.

App. 2010). Further, when conduct can, at worst, be described as negligent, the failure to preserve evidence does not rise to the level of a due process violation. *See Youngblood*, 488 U.S. at 58; *Guzman*, 539 S.W.3d at 402.

When evidence has been lost or destroyed in violation of due process, the sanctions a trial court may impose on the State include barring further prosecution, suppressing evidence, or giving a missing-evidence, adverse-inference, or spoliation instruction.[6] *See, e.g., Fisher*, 540 U.S. at 546 (noting defendant filed motion to dismiss charge based on destruction of evidence); *Youngblood*, 488 U.S. at 54 (referring to trial court's instruction that if jury found State had destroyed or lost evidence it could "infer that the true fact is against the State's interest"); *Trombetta*, 467 U.S. at 487 (when evidence destroyed in violation of due process, court must choose between barring further prosecution or suppressing State's most probative evidence); *see also Youngblood*, 488 U.S. at 59–60 (Stevens, J., concurring) (discussing adverse-inference instruction). A trial court has the discretion to admit evidence of spoliation and to instruct the jury on adverse inferences. *See United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000). To receive a missing-evidence, adverse-inference, or spoliation instruction, imposing the sanction of an adverse inference or a presumption against the State to be drawn from the destruction or loss of evidence, the defense must demonstrate bad faith on the part of the State. *See United States v. Valas*, 822 F.3d 228, 239 (5th Cir. 2016); *Wise*, 221 F.3d at 156; *see also State v. Vasquez*, 230 S.W.3d 744, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (Seymore, J., concurring).

## 2. Application of the Law to the Facts

The record shows that the police photographs of the documents in the vehicle were lost or destroyed when the police department's database crashed. However, the record is less clear as to

---

[6] *See generally Brookshire Bros. Ltd. v. Aldridge*, 438 S.W.3d 9, 19 n.6 (Tex. 2014) (noting that Texas courts usually use the term presumption while federal courts generally refer to a spoliation instruction as an adverse-inference instruction).

–17–

what happened to the actual documents in the back of the vehicle. The police testified that they did not seize those documents but inventoried them and left them in the impounded vehicle. The record does not show whether or not the vehicle was retrieved from impound, who, if anyone, retrieved the vehicle, or if the vehicle was retrieved, whether the documents were returned to Arthur.

At trial, Arthur did not seek to have the charges against her dismissed or suppressed due to the alleged loss or destruction of evidence. Instead, Arthur requested only that the trial court sanction the State by giving the following spoliation instruction to the jury:

**Spoliation of Evidence**

The jury is instructed that the defense has raised the issue of spoliation of evidence. ["]Spoliation of evidence["] means that a party has destroyed or lost evidence in its possession and that evidence may be unfavorable to the party who lost or destroyed same.

You are further instructed that the State has a duty to preserve evidence; that the loss or destruction of that evidence has prejudiced the right of [Arthur] to present evidence favorable to [her] defense of the charge of Driving While License Invalid.

(Emphasis added.)

At trial and on appeal, Arthur does not specify whether she is arguing the allegedly lost or destroyed evidence was material, exculpatory evidence or potentially useful evidence. At trial, Arthur's requested jury instruction refers to evidence that "may be unfavorable" to the State. In her brief on appeal, Arthur cites the law relating to the loss or destruction of evidence as to both material, exculpatory evidence and potentially useful evidence. However, in her argument, she maintains that the lost or destroyed documents "are not just 'potentially useful,' but are material to the charge lodged and if produced meet the test of materiality as well as impacting the issue of being exculpatory." We will construe Arthur's arguments to be in the alternative and address them as to both types of evidence.

–18–

First, we address Arthur's argument that the evidence was material, exculpatory evidence. Even if the alleged lost evidence possessed an exculpatory value that was apparent at the time, it does not follow that Arthur was unable to obtain comparable evidence by other reasonably available means. Arthur contends that the material, exculpatory evidence consisted of: (1) "papers contained in the rear seat of [Arthur's] vehicle that pertained to [the] suspension [of her driver's license]"; and (2) "photographs [of the documents in her vehicle] which were made at the scene" and "would have permitted [Arthur] to reconstruct [the] documents." Arthur does not contend that copies of these documents could not have been obtained from the Texas Department of Public Safety or other government agency, or from her attorney who was allegedly attempting to obtain an occupational license on her behalf. Nor does she explain why she needs the police photographs to determine what the documents were that she had in the vehicle. In fact, the record shows that Officer Crouch testified that the suspension paperwork he observed in the back of Arthur's vehicle was contained in State's Exhibit No. 3. Therefore, Arthur has not shown that the State failed to preserve material, exculpatory evidence in violation of her right to due process.

Second, we address Arthur's argument that the evidence was potentially useful. Even if the allegedly "lost or destroyed" documents might have exonerated Arthur, she does not assert, nor does the record show, bad faith on the part of the police or State. The record does not demonstrate any improper motive, personal animus against Arthur, or an intention to prevent Arthur from obtaining potentially useful evidence. Nor does Arthur identify any such evidence of bad faith. With respect to the documents in the back of the vehicle, Officer Crouch testified that he did not seize the paperwork in the back of Arthur's vehicle because there was no need to take her legal documents. The vehicle impound record states that "misc. documents" were left in the vehicle, but Officer Crouch stated that he did not separately inventory each document. Also, Det. Sgt. Leftwich stated that it was not customary to separately list every document in a vehicle

due to time constraints. With respect to the photographs of the contents of Arthur's car, Officer Crouch testified that during the process of building the new police department, their database crashed and case files, case photos, and "finger photos" were lost so those photos were provided to the District Attorney's Office with the case report. Therefore, Arthur has not shown that the State failed to preserve potentially useful evidence in violation of her right to due process.

We conclude that the trial court did not err when it denied Arthur's request for a spoliation jury instruction. Issue three is decided against Arthur.

## V. FAIR AND IMPARTIAL TRIAL

In issue four, Arthur argues she was denied a fair and impartial trial because the architecture of the courtroom caused the table for the prosecutor to abut the jury box and the wall of the jury box is not high enough to obscure the State's papers and notes.[7] The State responds that Arthur failed to preserve this error for appellate review.

As a prerequisite to presenting a complaint for appellate review, the record must show: (1) the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and (2) the trial court ruled on the request, objection, or motion, either expressly or implicitly, or refused to rule and the complaining party objected to the refusal. TEX. R. APP. P. 33.1(a). An off-the-record sidebar does not preserve a complaint for appellate review. *See Thomas v. State*, No. 05-12-001187-CR, 2014 WL 117421, at *3 (Tex. App.—Dallas Jan. 13, 2014, pet. ref'd) (not designated for publication); *Hullaby v. State*, 911 S.W.2d 921, 926 (Tex. App.—Fort

---

[7] Arthur's argument on appeal does not specify whether she is contending the trial court erred when it overruled her alleged sidebar objection or motion for new trial, or whether she is asserting that although she did not preserve the error it constitutes fundamental error because it deprived her of a fair and impartial trial. The only citations to authorities she provides are citations to the Constitution of the United States of America, and three United States Supreme Court cases for the general proposition of the right to a fair and impartial trial. *See* TEX. R. APP. P. 38.1(i) (brief must contain clear and concise argument for contentions made with appropriate citations to authorities and record).

Worth 1995, pet. ref'd). Also, if a complaint is raised in a motion for new trial, the defendant must present that motion to the trial court to preserve the issue for appellate review. *See* TEX. R. APP. P. 21.2, 21.6.

Arthur conceded that her counsel brought this matter to the trial court's attention only during a sidebar conference. In addition, Arthur acknowledges that the State did not deliberately display its papers to the jury and concedes that, after bringing the matter to the State's attention, the State was careful to conceal its papers and documents from the jury's view. Also, the record shows that, although Arthur raised this complaint in her motion for new trial, which was accompanied by her declaration stating that she observed jurors either read or attempt to read papers lying face up on the on the prosecutor's table, she did not present her motion for new trial to the trial court. *See* TEX. R. APP. P. 21.6. Rather, Arthur's motion for new trial was overruled by operation of law. *See* TEX. R. APP. P. 21.8(c). Further, we note that the record does not contain any photographs of the courtroom or any description of the courtroom's layout and dimensions.

We conclude that Arthur has failed to preserve issue four for appellate review.

## VI. MODIFICATION OF THE JUDGMENT

Although neither party raises the issue, we observe that the final judgment incorrectly states that Arthur was placed on community supervision for an indeterminate number of years. The record shows that the trial court assessed Arthur's punishment at 180 days of confinement and a fine in the amount of $1,000. It does not show that the trial court suspended her confinement and placed her on community supervision. However, the final judgment states "] [sic] SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR YEARS." An appellate court has the authority to modify an incorrect judgment to make the record speak the truth when it has the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (en banc);

*Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex .App.—Dallas 1991, pet. ref'd).  We conclude the trial court's final judgment should be modified to show that Arthur's sentence was not suspended and she was not placed on community supervision for an indeterminate number of years.  *See* TEX. R. APP. P. 43.2(b); *Bigley*, 865 S.W.2d at 27–28; *Asberry*, 813 S.W.2d at 529–30.  Accordingly, the judgment is modified as follows: "] [sic] SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR YEARS" is modified to read "☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR N/A YEARS."

## VII.  CONCLUSION

The evidence is sufficient to support Arthur's conviction.  The trial court did not err when it denied Arthur's motion to suppress and request for jury instructions on the affirmative defense of no receipt of actual notice and sanction for the spoliation of evidence.  Also, Arthur has failed to preserve for appellate review her argument that she was denied a fair and impartial trial.

We modify the trial court's judgment to reflect that Arthur was not placed on community supervision.  The trial court's judgment is affirmed as modified.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

180075F.U05

–22–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WINTER KAY ARTHUR, Appellant

No. 05-18-00075-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
No. 2, Kaufman County, Texas
Trial Court Cause No. 16-30605-CC2-M.
Opinion delivered by Justice Osborne.
Justices Schenck and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

the portion of the judgment that reads "] [sic] SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR YEARS" is modified to read "☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR N/A YEARS."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 7th day of August, 2019.