# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00428-CR

**Corye Len Justice, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 428TH DISTRICT COURT OF HAYS COUNTY
### NO. CR-16-0680, THE HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Corye Len Justice of the second-degree felony offense of possession of a controlled substance with intent to deliver, oxycodone weighing one gram or more but less than four grams, *see* Tex. Health & Safety Code § 481.112(c), and the third-degree felony offense of unlawful possession of a firearm by a felon, *see* Tex. Penal Code § 46.04(a). On appeal, appellant challenges the trial court's denial of his motion to suppress evidence and his requests for jury instructions on spoliation and, pursuant to article 38.23, to disregard illegally obtained evidence. *See* Tex. Code Crim. Proc. art. 38.23(a). For the following reasons, we affirm the judgments of conviction.

## BACKGROUND

Around 11:00 p.m. on May 23, 2016, a police officer pulled appellant over for speeding while driving his Chevrolet Tahoe on Interstate 35. The officer "paced" the Tahoe and

"determined that the vehicle was traveling at approximately 77 miles an hour" in a posted speed limit zone of 70 miles an hour. Appellant was the only occupant in the vehicle and admitted to the officer that he was speeding. The officer smelled the odor of "[b]urning marijuana" coming from the Tahoe and "observed what appeared to be a marijuana roach on the front passenger seat."[1]

Complying with the officer's instruction, appellant stepped out of his vehicle. The officer handcuffed him and, while the officer was in "the process of doing that," appellant told the officer that he had been "smoking a little weed" and "was trying to get down to San Antonio." The officer found "[a] large wad of cash in all denominations in [appellant's] front pocket." After the officer detained appellant in the back seat of the officer's patrol car, the officer searched the Tahoe. In addition to the marijuana roach on the front passenger seat, the officer found an "ashtray full of . . . marijuana roaches," "an unsmoked marijuana blunt" in the "headliner,"[2] a digital scale, and two cell phones. The officer "picked up the cup holder" of the Tahoe's console. It "was loose and it just came right out" exposing a space beneath the console. In that space, the officer found a handgun, a plastic bag containing a variety of pills, and "a glass jar containing a plastic bag full of green plant substance," which the officer identified as marijuana.

Based on the items that he found in the Tahoe, the officer arrested appellant. As part of his procedure or process, the officer photographed the items that he found and where he

---

[1] The officer testified at trial that an unsmoked marijuana blunt "was basically a blunt that had marijuana and it had not been smoked" and that a "[marijuana roach] is the end of a marijuana blunt. So if you take a cigar and you take all of the insides out of the cigar and you load it with marijuana and you smoke it all the way down, you have the roach."

[2] The officer testified that the "headliner . . . is above your head, on the driver's side" and that based on his training, the headliner was a common place for finding illegal substances.

found them in the Tahoe and submitted the items into evidence. Because "there was marijuana found in multiple places, like fresh marijuana," "all of that went into one bag and was submitted into evidence." "[B]ecause there were so many of them, [the blunts/roaches] were destroyed/discarded at the police department." Pills that were found in the Tahoe contained oxycodone. It was later found that Appellant was a convicted felon who had been released from confinement on April 10, 2015. Appellant subsequently was indicted for one count of possession of a controlled substance with intent to deliver, oxycodone weighing one gram or more but less than four grams, and one count of unlawful possession of a firearm by a felon.

The State's case against appellant proceeded to a jury trial in March 2019. The witnesses included the police officer who initiated the traffic stop, an investigator who testified that appellant was a felon who had been released from confinement within the past five years, another officer who testified about recorded phone calls appellant made from jail after his arrest, and a forensic scientist who testified that, based on her testing, she identified the controlled substance of oxycodone weighing 2.700 plus or minus .004 grams among the items found in the Tahoe. The exhibits included photographs of the items that the officer found in the Tahoe, including the gun and plastic bag of pills found beneath the console, two recordings of appellant's phone calls from jail, and the patrol car's dash-cam video recording of the traffic stop. In one of the phone calls, appellant is heard saying that he "stashed everything" in the "stash" place before being pulled over for speeding.

In his testimony, the officer recounted the traffic stop and "probable cause search" of the Tahoe, explaining to the jury that "in this situation, the odor and presence here of marijuana allows for officers to search a vehicle . . . because the probability that marijuana is there, which is an illegal substance, is very likely." The officer stated in his report that "[b]ased

3

on [his] training and experience [he] believed the green plant substance located inside the vehicle was marijuana," and he testified that he knew what marijuana was based on his "training and experience" and that "[the substance] was very obviously marijuana." He also testified "people use the word 'weed' when they're referring to marijuana," appellant "told [the officer] that he was smoking a little weed," and that "[t]he odor of marijuana in that vehicle was so overwhelming" and "coming from throughout the vehicle." He further testified that the odor of marijuana was coming from:

> The partially smoked blunt loaded with a green plant substance on top of the front passenger seat. The digital scale with marijuana residue throughout directly below the radio—radio compartment. The portable, black-in-color ashtray with numerous blunts containing burnt marijuana. The unsmoked blunt containing a green plant substance inside an unsealed wrapper above the—in the headliner above the driver's seat. The glass jar containing a plastic bag full of a green plant substance inside of a purple Crown Royal bag below the cup holder in the center console. The plastic bag containing a green plant substance inside the purple Crown Royal bag below the cup holder.

With respect to his search of the space beneath the console, the officer testified:

> I picked up the cup holder of the console. That is a common place for people to—on those types of vehicles to hide stuff. And after picking it up I noticed that—they don't generally come loose, but on the Chevy—if anyone is familiar with the Chevy, those older models, that's easily—it does easily come out if you pull hard enough. In this situation it was loose and it just came right out. So I picked it up and determined that there was multiple items stored in that void.

He further testified that the items in that space appeared to have been intentionally placed and secreted there.

During trial, the court took under advisement appellant's motion to suppress evidence. Appellant sought to suppress evidence that the officer found in the Tahoe, including the gun and the oxycodone that were found in the space beneath the console, arguing that the

4

officer's warrantless search of the vehicle was without probable cause and that "[t]he State failed to preserve material, exculpatory evidence that is critical to [appellant]'s defense to the illegal search and seizure of evidence obtained during such illegal search, in violation of [his] Due process rights." Consistent with his common practice or procedure, the officer testified that he destroyed or discarded the blunts that he found, including the one that he found in the headliner, and that he put all the fresh marijuana in one bag "as far as like submitting those for weight." He explained that placing the marijuana found in multiple places in one bag was the proper procedure "when it's quite evident" that "the item is less than two ounces" and that "it does not change the charge when it's below two ounces; it's all a Class B misdemeanor, so it doesn't matter." He "weighed [the marijuana]" and "[i]t was .31 ounces."

In addition to seeking to suppress evidence that the officer found in the Tahoe, appellant requested a jury instruction regarding spoliation of the evidence and argued that, "if there was spoliation" "with malicious intent," an article 38.23 instruction to disregard illegally obtained evidence was also necessary. *See* Tex. Code Crim. Proc. art. 38.23(a) (requiring jury instruction when legal evidence raises issue that evidence was obtained in violation of Constitution or statutes). Appellant's counsel conceded that if the trial court did not include the requested spoliation instruction in the jury charge, "then the 38.23 [instruction] was not necessary," as this alleged spoliation was the sole basis for this instruction. Appellant's proposed spoliation instruction was as follows:

> The State has a duty to gather, preserve and produce at trial evidence which may possess exculpatory nature. Such evidence must be of a nature that the Defendant would be unable to obtain comparable evidence through reasonably available means. The State has no duty to gather or indefinitely preserve evidence considered by a qualified person to have no exculpatory value so that as a yet unknown defendant may later examine the evidence. If, after considering all of

5

the proof, you find that the State failed to gather or preserve evidence, the content or quality of which are in issue, and the production of which would more probably than not be a benefit to the Defendant, you may infer that the absent evidence would be favorable to the Defendant. If you so find that [the officer] had a duty to retain the item of evidence alleged to be that of a marijuana blunt allegedly to have been discovered in the headliner of [appellant]'s vehicle, and that [the officer] subsequently destroyed this evidence, you may consider that -- that this evidence would have been favorable to [appellant] on the issue of reasonableness of the scope of the search conducted by [the officer].

At the conclusion of the charge conference, the court denied appellant's motion to suppress evidence and his requests for spoliation and article 38.23 jury instructions.

The jury found appellant guilty of both counts. Following a sentencing hearing, the trial court found the enhancement paragraphs to be true, *see* Tex. Penal Code § 12.42, and sentenced appellant to thirty-five years' confinement for each count. Appellant filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## ANALYSIS

**Motion to Suppress Evidence**

In his first issue,[3] appellant argues that the trial court abused its discretion when it denied his motion to suppress evidence because "[t]he search and seizure were arguably illegal

---

[3] Appellant states his issues presented as follows:

Whether a defendant is entitled to a jury instruction on any defensive issue raised by the evidence.

Whether a trial court abuses its discretion by denying a requested jury instruction on a defensive issue raised by the evidence.

Whether there was some evidence to support a possible jury finding that the search of the vehicle and the seizure of the items found therein and on the occupants' persons was illegal.

for lacking probable cause and causing the destruction of part of the vehicle not normally used as a container."

*Standard of Review and Applicable Law*

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). When the trial court does not make explicit findings of fact, as is the case here, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018) (citing *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)). Moreover, a trial court's ruling on the motion will be upheld if it is correct under any theory of law applicable to the case. *Id.*; *see Story*, 445 S.W.3d at 732.

"To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct." *Ford*, 158 S.W.3d at 492; *see* U.S. Const. amend. IV (providing persons with right to be secure "against unreasonable searches and seizures"). "A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant." *Ford*, 158 S.W.3d at 492 (citing *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002)). "Pursuant to the Fourth

---

Whether there was some evidence to support the inclusion of a spoliation instruction.

We address his three substantive arguments as stated in the summary and argument sections of his brief. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

Amendment, a warrantless search is per se unreasonable unless it falls within a warrant exception." *Marcopoulos v. State*, 538 S.W.3d 596, 599 (Tex. Crim. App. 2017); *see Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007) (explaining that "State shoulders the burden to prove that an exception to the warrant requirement applies").

"The automobile exception allows for the warrantless search of an automobile 'if it is readily mobile and there is probable cause to believe that it contains contraband.'" *Marcopoulos*, 538 S.W.3d at 599 (quoting *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009)). "Probable cause exists where the facts and circumstances known to law enforcement officers are 'sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *Id.* at 599–600 (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949)). "For probable cause to exist, there must be a 'fair probability' of finding inculpatory evidence at the location being searched." *Id.* at 600 (quoting *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008)). "A reviewing court should measure this 'probabilit[y]' by 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Id.* (quoting *Brinegar*, 338 U.S. at 175). "And it must take into account 'the totality of the circumstances' known to the officer, eschewing a 'divide-and-conquer' or 'piecemeal' approach." *Id.* (quoting *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007)).

*Did the trial court abuse its discretion in denying appellant's motion to suppress?*

In this case, the officer searched the Tahoe without a warrant, so the question is whether the State met its burden to show that the automobile exception applied. *See Gutierrez*, 221 S.W.3d at 685. Appellant does not challenge that the State's proof established that the

8

Tahoe was readily mobile. *See Marcopoulos*, 538 S.W.3d at 599 (stating requirements for automobile exception to apply). He argues that probable cause was "arguably lacking" because the officer: (i) "disassembled part of the vehicle by removing the cupholder to uncover a hidden compartment where he found . . . a handgun, and pills, some containing oxycodone," (ii) "acknowledged he could not discern if a photographed blunt he found contained marijuana or merely tobacco," and (iii) "admitted to commingling evidence in a fashion that made it impossible for [the] jury to see the items that were found in plain view or for Appellant to test them individually for the presence of a controlled substance."

Appellant relies on *United States v. Pino*, 855 F.2d 357, 364 (6th Cir. 1988), to support his position that areas that are "not normally used as a container" and that require dismantling of a vehicle are not properly within the scope of a vehicle search, but that case concerned the search-incident-to-a-lawful-arrest exception, *see id.* at 363, and not the authorized scope of a search that is conducted under the automobile exception where the requirement of probable cause has been met. *See id.; see also United States v. Ross*, 456 U.S. 798, 823 (1982) (stating that scope of warrantless search that is based on probable cause is no narrower than scope of search authorized by warrant supported by probable cause). When the automobile exception applies, an officer is authorized to "search 'every part of the vehicle and its contents that may conceal the object of the search.'" *Neal*, 256 S.W.3d at 282 (quoting *Ross*, 456 U.S. at 825); *State v. Pena*, 581 S.W.3d 467, 484 (Tex. App.—Austin 2019, pet. ref'd) (concluding that there was probable cause to search car, including trunk, and citing cases that determined that probable cause justified searching every part of vehicle that might conceal contraband).

In this case, the officer testified that he searched the Tahoe because he observed marijuana in plain view, smelled "burning marijuana" and the odor of marijuana "throughout"

the Tahoe, and appellant admitted to "smoking a little weed." The officer also testified that the space beneath the console was a "common place for people to—on those types of vehicles to hide stuff" and that the cup holder "was loose and it just came right out." Viewed in the light most favorable to the trial court's implicit findings, this evidence supports findings that the officer had probable cause to search the Tahoe in areas that he was aware could be used to hide marijuana and that he did not exceed the search's authorized scope when he "picked up the cup holder" and searched the space beneath it. *See Marcopoulos*, 538 S.W.3d at 599–600 (explaining that probable cause exists when there is fair probability of finding inculpatory evidence at location being searched); *Neal*, 256 S.W.3d at 282 (explaining that when automobile exception applies, police are authorized to search every part of vehicle and contents that may conceal object of search); *see also Lerma*, 543 S.W.3d at 190. Thus, we conclude that the trial court did not abuse its discretion when it denied appellant's motion to suppress evidence. *See Story*, 445 S.W.3d at 732.

**Jury Charge**

In his remaining issues, appellant argues that the trial court abused its discretion when it denied his requested jury instructions on spoliation and, pursuant to article 38.23, to disregard illegally obtained evidence and that he suffered harm by the trial court's denial of his requested instructions.

*Standard of Review and Applicable Law*

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Ngo v. State*,

10

175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury charge error).

"A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of how the trial court views the credibility of the defense." *Celis v. State*, 416 S.W.3d 419, 430 (Tex. Crim. App. 2013) (citing *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008)). The defendant "'bears the burden of production' with respect to a defense," *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007) (quoting *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003)), and "the issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense," *Kuhn v. State*, 393 S.W.3d 519, 532 (Tex. App.—Austin 2013, pet. ref'd) (quoting Tex. Penal Code § 2.03(c)); *see Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007) (discussing defendant's right to jury instructions on defensive issues). "[A] defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw*, 243 S.W.3d at 657–58; *see Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010) ("The defendant bears the burden of showing that each element of the defense has been satisfied."). In determining whether a defense is thus supported by the evidence, the court views the evidence in the light most favorable to the defendant's requested jury instruction, *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020), and relies "on its own judgment, formed in the

light of its own common sense and experience, as to the limits of rational inference from the facts proven," *Shaw*, 243 S.W.3d at 658.

*Did the trial court abuse its discretion in denying the spoliation instruction?*

"Spoliation concerns the loss or destruction of evidence." *Guzman v. State*, 539 S.W.3d 394, 401 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (citing *Torres v. State*, 371 S.W.3d 317, 319 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd)). When the State fails to preserve material, exculpatory evidence, the State commits a due process violation, *see Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988); *Zapata v. State*, 449 S.W.3d 220, 228–29 (Tex. App.—San Antonio 2014, no pet.), and its good or bad faith in doing so is not relevant, *see Illinois v. Fisher*, 540 U.S. 544, 547 (2004) (per curiam); *Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010) (orig. proceeding). On the other hand, when spoliation concerns "potentially useful evidence," the defendant bears the burden of establishing that the State lost or destroyed the evidence in bad faith. *See Youngblood*, 488 U.S. at 57–58; *Ex parte Napper*, 322 S.W.3d at 229; *Torres*, 371 S.W.3d at 319–20; *see also Swearington v. State*, 303 S.W.3d 728, 734 (Tex. Crim. App. 2010). "'Bad faith' is more than simply being aware that one's action or inaction could result in the loss of something that is recognized to be evidence." *Ex parte Napper*, 322 S.W.3d at 238. It "entails some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful." *Id.* Absent evidence of bad faith, a spoliation instruction is not required. *See Youngblood*, 488 U.S. at 57–58; *Snell v. State*, 324 S.W.3d 682, 684 (Tex. App.—Fort Worth 2010, no pet.) (holding no error in failing to include spoliation instruction in jury charge because there was no claim of bad faith on part of State).

12

Appellant's proposed spoliation instruction addressed the "marijuana blunt allegedly to have been discovered in the headliner of [appellant]'s vehicle" that the officer testified was destroyed or discarded. Appellant argues that because the State failed to preserve potentially exculpatory evidence, he was entitled to an instruction that the jury may infer that such evidence was exculpatory and that the evidence "at least raised a fact issue about whether [the officer] found marijuana in plain sight in the vehicle to justify a further and much more invasive search." Because the officer did not preserve the blunts for testing including the one found in the headliner, appellant argues that he was unable to test the substance found in plain view to determine if it was in fact marijuana and that the officer's "standard practice" of placing all seized marijuana in one container constitutes bad faith because it precludes a defendant from testing items allegedly found in plain view when they are "commingled with items found only after an intrusive search." He relies on the officer's testimony that he could not determine from the photographs alone whether a blunt contained marijuana.

But the evidence that the officer failed to preserve the blunts and was unable to determine from the photographs alone that a blunt contained marijuana was at best potentially useful. *See Youngblood*, 488 U.S. at 57–58. Even if the blunts did not contain marijuana, such evidence would not have been exculpatory to the charges for which Appellant was convicted and other evidence was sufficient to support the officer's probable cause to search the Tahoe. *See id.*; *see also Zapata*, 449 S.W.3d at 229 (explaining that police do not have "undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution" (quoting *Youngblood*, 488 U.S. at 58)); *White v. State*, 125 S.W.3d 41, 43–44 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (explaining that "[a]ppellant must affirmatively show that the lost evidence was favorable and material to his

13

defense"). The officer testified that appellant admitted to "smoking a little weed" and that he smelled the odor of marijuana "throughout" the Tahoe.

Because the blunts were not material, exculpatory evidence, it was appellant's burden to establish that the officer destroyed the blunts in bad faith. *See Ex parte Napper*, 322 S.W.3d at 229. Appellant relies on the officer's testimony that he was following his common practice to combine the marijuana into a single bag, but this evidence is not evidence of bad faith. *See id.* (explaining that bad faith was not established by "showing simply that the analyst destroyed the evidence without thought, or did so because that was the common practice, or did so because the analyst believed unreasonably that he was following the proper procedure"); *see also Youngblood*, 488 U.S. at 58 (concluding that negligent conduct did not support finding of bad faith); *Guzman*, 539 S.W.3d at 402 (concluding that negligent failure to preserve evidence does not rise to level of due process violation).

Viewing the evidence in the light most favorable to the submission of appellant's requested spoliation instruction, we conclude that appellant did not present any evidence that would support a rational inference that the officer acted in bad faith when he destroyed or discarded items found in the Tahoe, including the blunt that he found in the headliner, or when he combined the marijuana that was found in multiple locations into a single bag. *See Shaw*, 243 S.W.3d at 657–58. Thus, we conclude that the trial court did not abuse its discretion when it denied appellant's requested spoliation instruction.

*Did the trial court abuse its discretion in denying an article 38.23 instruction?*

Appellant also argues that the trial court abused its discretion when it denied his request for an article 38.23 instruction because a fact question exists concerning the

circumstances allegedly giving rise to probable cause to search the Tahoe, entitling him to an instruction to the jury to disregard illegally obtained evidence.

A defendant generally has a right to the submission of an article 38.23(a) instruction if there are "disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). The evidence, however, must raise an issue of fact, the evidence on that fact must be affirmatively contested, and the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* When the evidence does not raise a genuine issue about a material fact, the trial court acts properly by denying an instruction. *Id.* (citing *Murphy v. State*, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982)). And, if other facts that are not in dispute are sufficient to support that the challenged conduct was lawful, "the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence." *Id.* at 510. "The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct." *Id.* at 510–11.

Appellant asserts that the legality of the officer's search depended on "a finding of probable cause based on the presence of marijuana in plain view" and that the jury should have been instructed that "it could infer from the failure to preserve the blunts that they in fact did not contain any illegal substances" and from that inference, the jury could have concluded that the officer "lacked probable cause to search the vehicle and chosen to disregard the evidence." But as appellant conceded at trial, an article 38.23 instruction was unnecessary without his requested spoliation instruction. *See Madden*, 242 S.W.3d at 510 (explaining that if other facts that are not in dispute are sufficient to support that challenged conduct was lawful, "the disputed fact issue is not submitted to the jury because it is not material to the ultimate

15

admissibility of the evidence"). The disputed fact of whether the blunt found in the headliner contained marijuana was immaterial to whether the officer had probable cause to search the vehicle. The officer testified that appellant admitted that he had been "smoking a little weed" in the Tahoe and that the officer smelled the odor of marijuana "throughout" the Tahoe. Given this evidence, even if the blunts, including the one found in the headliner, were in fact not marijuana, the officer had probable cause to search the vehicle.

Viewing the evidence in the light most favorable to the submission of an article 38.23 instruction, we conclude that the trial court did not abuse its discretion in denying appellant's request. *See Shaw*, 243 S.W.3d at 657–58.

## CONCLUSION

For these reasons, we overrule appellant's issues and affirm the trial court's judgments of conviction.

_____
Melissa Goodwin, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed: June 16, 2021

Do Not Publish

16